IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| ATELIERS DE LA HAUTE-GARONNE (French Corporation) and F2C2 SYSTEMS S.A.S. (French Corporation), | ) ) ) ) | |
| Plaintiffs, | ) ) ) | |
| v. | ) ) | Civil Action No.: 09-598-LPS |
| BROETJE AUTOMATION-USA INC. (Delaware Corporation), BRöTJE-AUTOMATION GMBH (German Corporation), | ) ) ) ) ) | |
| Defendants. | ) | |

## PRELIMINARY JURY INSTRUCTIONS

Members of the jury:

Now that you have been sworn in, I have the following preliminary instructions for guidance on your role as jurors in this case.

### 1. THE PARTIES AND THEIR CONTENTIONS

This case is an action involving patent infringement under the patent laws of the United States, unfair competition under the common law and the Lanham Act, trade dress infringement, and intentional interference with prospective economic advantage. The parties are Ateliers de la Haute-Garrone and F2C2 Systems S.A.S., whom I may refer to collectively as "Plaintiffs" or "AHG," on the one hand, and Broetje Automation-USA Inc. and Brötje-Automation GmbH, whom I may refer to collectively as "Defendants," "Broetje" or "the Broetje Parties" on the other hand.

1

Ateliers de la Haute-Garonne is the owner of United States Patent No. 5,011,339 and United States Patent No. 5,143,216. You may hear the lawyers and witnesses in this case refer to these patents as the '339 patent and the '216 patent, respectively. Together, the '339 patent and the '216 patent may be referred to as "the Asserted Patents" or "AHG's Patents." AHG alleges that the other plaintiff, F2C2 Systems S.A.S., is the exclusive licensee of the Asserted Patents. AHG contends that each of the Broetje Parties infringes claims 1, 2, and 6 of the '339 patent and also infringes claims 1 and 2 of the '216 patent by making, using, offering for sale and/or selling within the United States devices that embody the inventions disclosed and claimed. The lawyers and witnesses and I may sometimes refer to these devices as the "Broetje Parties' cassettes" or "Automated Fastener Feed Systems," or as the "accused product" or the "accused products." AHG alleges that Broetje's alleged patent infringement is willful.

The Broetje Parties contend that the accused products do not infringe the Asserted Patents, that they did not willfully infringe the Asserted Patents, and that in any event the Asserted Patents are invalid. To fulfill your duty as jurors, you must decide whether claims 1, 2, and 6 of the '339 patent and claims 1 and 2 of the '216 patent have been infringed and also whether those claims are invalid.

AHG also contends that the similarity in appearance of the Broetje Parties' Automated Fastener Feed Systems to AHG's own products confuses consumers into mistakenly believing that they are purchasing AHG products, when in fact the products were made by the Broetje Parties. As a result, AHG contends each of the Broetje Parties is liable for unfair competition and trade dress infringement. The Broetje Parties deny these claims.

AHG also contends that each of the Broetje Parties have intentionally interfered with AHG's prospective economic advantage by selling to customers the accused products. AHG alleges that customers believe that they are purchasing AHG products when they are in fact purchasing the Broetje Parties' accused products. The Broetje Parties deny these claims.

**2.    DUTY OF THE JURY**

It will be your duty to find what the facts are from the evidence as presented at the trial. You, and you alone, are the judges of the facts. You will have to apply those facts to the law as I will instruct you at the close of the evidence. You must follow that law whether you agree with it or not.

You are the judges of the facts. I will decide which rules of law apply to this case.

Nothing I say or do during the course of the trial is intended to indicate what your verdict should be.

**3.    EVIDENCE**

The evidence from which you will find the facts will consist of the testimony of witnesses, and documents and other things admitted into evidence. In addition, the evidence may include certain facts as agreed to by the parties or as I instruct you.

Certain things are not evidence.

(1) Statements, arguments, and questions by lawyers are not evidence.

(2) Objections to questions are not evidence. Lawyers have an obligation to their clients to make an objection when they believe testimony or exhibits being offered into evidence are not admissible under the rules of evidence. You should not be influenced by a lawyer's objection or by my ruling on the objection. If I sustain or uphold the objection and find the matter is not admissible, you should ignore the question or document. If I overrule an objection and allow the matter into

evidence, you should treat the testimony or document like any evidence. If I instruct you during the trial that some item of evidence is admitted for a limited purpose, you must follow that instruction and consider that evidence for that purpose only. If this does occur during the trial I will try to clarify this for you at that time.

(3) Anything you see or hear outside the Courtroom is not evidence and must be disregarded. You are to decide this case solely on the evidence presented here in the Courtroom.

In judging the facts, it will be up to you to decide which witnesses to believe, which witnesses not to believe, and how much of any witness' testimony to accept or reject.

4.     **DIRECT AND CIRCUMSTANTIAL EVIDENCE**

Some of you may have heard the terms "direct evidence" and "circumstantial evidence."

Direct evidence is simply evidence like the testimony of an eyewitness which, if you believe it, directly proves a fact. If a witness testified that he saw it raining outside, and you believed him, that would be direct evidence that it was raining.

Circumstantial evidence is simply a chain of circumstances that indirectly proves a fact. If someone walked into the courtroom wearing a raincoat covered with drops of water and carrying a wet umbrella, that would be circumstantial evidence from which you could conclude that it was raining outside.

It is your job to decide how much weight to give the direct and circumstantial evidence. The law makes no distinction between the weight that you should give to either one, nor does it say that one is any better evidence than the other. You should consider all the evidence, both direct and circumstantial, and give it whatever weight you believe it deserves.

## 5. BURDENS OF PROOF

In any legal action, facts must be proven by a required standard of evidence, known as the "burden of proof." In a patent case such as this, there are two different burdens of proof that are used. The first is called "preponderance of the evidence." The second is called "clear and convincing evidence."

AHG is accusing the Broetje Parties of patent infringement, trade dress infringement, unfair competition, and intentional interference with prospective economic advantage. AHG has the burden of proving its claims and the amount of its money damages, if any, by what is called a preponderance of the evidence. That means AHG has to produce evidence which, when considered in light of all of the facts, leads you to believe that what AHG claims is more likely true than not. To put it differently, if you were to put the evidence of AHG and the Broetje Parties concerning infringement on opposite sides of a scale, the evidence supporting AHG's claims would have to make the scales tip somewhat on its side in each instance. If the scale should remain equal or tip in favor of the Broetje Parties, you must find for the Broetje Parties.

If you find that the Broetje Parties infringed one or more of the patent claims that have been asserted in this case, then as a separate question, AHG has the burden of proving its additional contention that the infringement was willful by clear and convincing evidence. Clear and convincing evidence is evidence that produces an abiding conviction that the truth of a factual contention is highly probable. Proof by clear and convincing evidence is, thus, a higher burden than proof by a preponderance of the evidence.

In this case, in addition to denying AHG's claims, the Broetje Parties assert that all of the Asserted Patents are invalid. The Asserted Patents, however, are presumed to be valid. The

Broetje Parties have the burden of proving that the Asserted Patents are invalid by clear and convincing evidence.

Those of you familiar with criminal cases will have heard the term "proof beyond a reasonable doubt." That burden does not apply in a civil case and you should, therefore, put it out of your mind in considering whether or not AHG or the Broetjes Parties have met their burden of proof.

6. **PATENT VIDEO**

Before I describe the parties' contentions further, at this time, we are going to show a 17-minute video that will provide background information to help you understand what patents are, why they are needed, the role of the Patent Office, and why disputes over patents arise. This video was prepared by the Federal Judicial Center, not the parties in this case, to help introduce you to the patent system. During the video, reference will be made to a sample patent. A copy of this patent has been given to you in your jury binder so that you may follow along with the video.

[The video will be played.]

7.  **GENERAL GUIDANCE REGARDING PATENTS**

I will now give you a general overview of what a patent is and how one is obtained. You may have heard some of this in the patent video we just watched.

A.  **CONSTITUTIONAL BASIS FOR PATENT GRANT**

The United States Constitution, Article I, Section 8, grants the Congress of the United States the power to enact laws "to promote the progress of science and useful arts, by securing, for limited times to authors and inventors the exclusive right to their respective writings and discoveries."

B.  **EXCLUSIONARY RIGHT AND TERM OF A PATENT**

The United States Patent and Trademark Office is responsible for reviewing patent applications and granting patents. Once the "Patent Office" or "PTO" has issued a patent, the patent owner has the right to exclude others from making, using, selling, or offering for sale the invention throughout the United States for the length of the patent term.

A person who, without the patent owner's authority, makes, uses, sells, or offers to sell a product or employs a method that is covered by one or more claims of a valid patent, infringes the patent. A person can also induce others to infringe a patent by suggesting to other persons or companies that they undertake acts that constitute infringement. This is called inducing infringement. A person can also contribute to another's infringement of a patent, which is called contributory infringement.

C.  **THE PARTS OF A PATENT**

I will next briefly describe the parts of a patent and some of the procedures followed by those attempting to obtain patents. Many of the terms I will use in this description are contained in a "Glossary of Patent Terms" which I have given to you along with a copy of these preliminary

instructions. I will read this Glossary to you and you should also feel free to refer to the Glossary throughout the trial.

For an invention to be patentable, it must be new, useful, and, at the time the invention was made, must not have been obvious to a person having ordinary skill in the art to which the subject matter pertains.

Under the Patent Laws, the Patent Office examines patent applications and issues patents. A person applying for a patent must include a number of matters in his or her application, including (1) a detailed description of the invention in terms sufficiently full, clear, concise and exact to enable any person skilled in the art to which the invention pertains to be able to make and use the invention; (2) a disclosure of the best mode of carrying out the invention known to the inventor at the time of filing; and (3) one or more claims.

The application includes a written description of the invention called a "specification" and may include drawings that illustrate the invention. The specification concludes with one or more claims that particularly and distinctly define the subject matter that the inventor regards as his or her invention. When a patent application is received at the Patent Office, it is assigned to an examiner, who examines the application, including the claims, to ascertain whether the application complies with the requirements of the U.S. patent laws. The examiner reviews files of prior work of others in the form of files of patents and publications. This type of material is called "prior art." Prior art is generally technical information and knowledge that was known to the public either before the invention by the applicant or more than one year before the filing date of the application. Documents found in the search of prior art are called "references." In conducting the search of prior art, the examiner notes in writing on the file the classes or subclasses of art searched.

The compilation of the papers concerning the proceedings before the Patent Office is called the "prosecution history," "file wrapper," or "file history." The Patent Office does not have its own laboratories or testing facilities. The examiner may "reject" the patent application claims if he or she believes that they are applications for inventions that are not patentable in light of the prior art, or because the patent specification does not adequately describe the claimed inventions. The applicant may then amend the claims to respond to the examiner's rejections. If, after reviewing the prior art, the examiner concludes that the claims presented by the applicant patentably define the applicant's claimed invention over the most relevant known prior art, the application is granted a U.S. Patent.

### D.   INFRINGEMENT DISPUTES AND INVALIDITY

The PTO and its examiners do not decide infringement issues. If there is a dispute about infringement, it is brought to the Court to decide. Here, you are also asked to decide about validity, that is, whether the patent should have been allowed by the PTO. A party accused of infringement is entitled to challenge whether the asserted patent claims are sufficiently new or nonobvious in light of the prior art or whether other requirements of patentability have been met. In other words, a defense to an infringement lawsuit is that the patent in question is invalid.

### 8.   SUMMARY OF THE PATENT ISSUES

In this case, you must decide several things according to the instructions that I will give you at the end of the trial. Those instructions will repeat this summary and will provide more detail. One thing you will not need to decide is the meaning of the patent claims. That is one of my jobs – to explain to you what the patent claims mean.

By the way, the word "claims" is a term of art and I will instruct you on its meaning at the end of the trial. Meanwhile, you will find a definition in the Glossary attached to these preliminary instructions.

In essence, you must decide:

(1) whether AHG has proven by a preponderance of the evidence that Broetje infringed one or more of the asserted claims of the '339 patent or the '216 patent;

(2) whether AHG has proven by clear and convincing evidence that Broetje willfully infringed one or more of the asserted claims of the '339 patent or the '216 patent;

(3) whether Broetje has proven by clear and convincing evidence that one or more of the asserted claims of the '339 patent or the '216 patent are invalid; and

(4) what damages AHG is entitled to receive from Broetje.

## 9.    SUMMARY OF THE NON-PATENT ISSUES

In this case, you must decide several other things which do not relate to patents. These other things you must also decide according to the instructions that I will give you at the end of the trial. In essence, you must decide:

(1) whether AHG has proven by a preponderance of the evidence that Broetje unfairly competed against AHG;

(2) whether AHG has proven by a preponderance of the evidence that Broetje infringed AHG's trade dress;

(3) whether AHG has proven by a preponderance of the evidence that Broetje intentionally interfered with AHG's prospective economic benefit; and

(4) what damages AHG is entitled to receive from Broetje.

10. **CONDUCT OF THE JURY**

Now, a few words about your conduct as jurors.

First, I instruct you that during the trial you are not to discuss the case with anyone or permit anyone to discuss it with you. Until you retire to the jury room at the end of the case to deliberate on your verdict, you simply are not to talk about this case. If any lawyer, party, or witness does not speak to you when you pass in the hall, ride the elevator, or the like, remember it is because they are not supposed to talk with you, nor you with them. In this way, any unwarranted and unnecessary suspicion about your fairness can be avoided. If anyone should try to talk to you about the case, bring the matter to the Court's attention promptly.

Second, do not read or listen to anything touching on this case in any way.

Third, do not try to do any research or make any investigation about the case on your own.

Let me elaborate. During the course of the trial, you must not conduct any independent research about the case, the matters in the case, and the individuals or entities involved in the case. In other words, you should not consult dictionaries or reference materials, search the internet, websites, blogs, or any other electronic means. Also, should there happen to be a newspaper article or radio or television report relating to this case, do not read the article or watch or listen to the report. It is important that you decide this case based solely on the evidence presented in the courtroom. Please do not try to find out information from any other sources.

I know that many of you use cell phones, BlackBerries, iPhones, the internet, and other tools of technology. You also must not talk to anyone about this case or use these tools to

11

communicate electronically with anyone about the case. This includes your family and friends. You may not communicate with anyone or post any information about the case on or through your cell phone, through e-mail, your BlackBerry or iPhone, text messaging, on Twitter, through any blog or website, through any internet chat room, or by way of any other social networking websites, including Facebook, MySpace, LinkedIn, and YouTube.

Finally, do not form any opinion until all the evidence is in. Keep an open mind until you start your deliberations at the end of the case.

During the trial, you may, but are not required to, take notes regarding testimony; for example, exhibit numbers, impressions of witnesses, or other things related to the proceedings. A word of caution is in order. There is generally, I think, a tendency to attach undue importance to matters which one has written down. Some testimony which is considered unimportant at the time presented, and thus not written down, takes on greater importance later in the trial in light of all the evidence presented. Therefore, you are instructed that your notes are only a tool to aid your own individual memory and you should not compare your notes with other jurors in determining the content of any testimony or in evaluating the importance of any evidence. Your notes are not evidence, and are by no means a complete outline of the proceedings or a list of the highlights of the trial. Also, keep in mind that you will not have a transcript of the testimony to review. So, above all, your memory will be your greatest asset when it comes time to deliberate and render a decision in this case.

In addition, please make sure that note-taking does not distract you from your tasks as jurors. You must listen to all the testimony of each witness. You also need to decide whether and how much to believe each witness. That will require you to watch the appearance, behavior,

and manner of each witness while he or she is testifying. You cannot write down everything that is said and there is always a fear that a juror will focus so much on note-taking that he or she will miss the opportunity to make important observations. If you do take notes, you must leave them in the jury deliberation room which is secured at the end of each day. And, remember that they are for your own personal use.

I will give you detailed instructions on the law at the end of the case, and those instructions will control your deliberations and decision.

I also ask that you wear your juror identification tags where people can see them, so persons involved in the case don't accidentally engage you in conversation. Even if it is innocent conversation, it might draw into question your impartiality. So please make sure that people can identify you as jurors in the case.

**11.    SIDEBARS**

During the trial, it may be necessary for me to talk with the lawyers out of your hearing by having a bench conference, which is also called a sidebar. If that happens, please be patient.

We are not trying to keep important information from you. These conferences are necessary for me to fulfill my responsibility to be sure that evidence is presented to you correctly under the law.

We will, of course, do what we can to keep the number and length of these conferences to a minimum. While we meet, feel free to stand up and stretch and walk around the jury box, if you wish.

I may not always grant an attorney's request for a sidebar. Do not consider my granting or denying a request for a conference as any indication of my opinion of the case or of what your verdict should be.

12. **COURSE OF THE TRIAL**

The trial will now begin. First, each side may make an opening statement. An opening statement is neither evidence nor argument. It is an outline of what that party intends to prove, and is presented to help you follow the evidence as it is offered.

After the opening statements, AHG will present its witnesses, and Broetje may cross-examine them. Then Broetje will present its witnesses, and AHG may cross-examine them.

After all the evidence is presented, the attorneys will make their closing arguments to summarize and interpret the evidence for you, and I will give you instructions on the law and describe for you the matters you must resolve.

You will then retire to the jury room to deliberate on your verdict.

At the end of this trial and before you begin your deliberations, I will read and give you a copy of written instructions on the law.

13. **TRIAL SCHEDULE**

Though you may have heard me say this during voir dire, I want to again outline the schedule I expect to maintain during the course of this trial.

This case is expected to take 5 days to try. We will normally begin the day at 9:00 A.M. We will go until around 12:30 P.M. and, after a 30 minute break for lunch, from about 1:00 P.M. to 4:30 P.M. There will be a fifteen minute break in the morning and another fifteen minute break in the afternoon. If you need a break at some additional time – perhaps to use the restroom, or perhaps

because you are feeling drowsy – you should try to get my attention or my staff's attention by waving or standing, and we'll do our best to accommodate you.

The only significant exception to our schedule may occur when the case is submitted to you for your deliberations. On that day, the proceedings might last beyond 4:30 P.M. We will post a copy of this schedule for your convenience in the jury deliberation room.

Finally, please understand that this is a timed trial. That means the Court has allocated to each party a maximum number of hours in which to present all portions of its case. This allows me to assure you that we expect to be completed with this case by Friday, that is by April 12. Of course, to keep on schedule, it is important that you be here promptly each morning and be ready at the end of each of our scheduled breaks.

## GLOSSARY OF PATENT TERMS

**Applicants**  The named inventors who are applying for the patent.

**Assignment**  Transfer of ownership rights in a patent or patent application from one person or company to another.

**Claims**  That part of a patent which defines the metes and bounds of the invention. These are found at the end of the patent specification in the form of numbered paragraphs.

**Disclosure or description**  That part of the patent specification which explains how the invention works and usually includes a drawing.

**Elements**  The required parts of a device or the required steps of a method. A device or method infringes a patent if it contains each and every element of a patent claim

**File wrapper / File history**  The written record of proceedings in the U.S. Patent and Trademark Office ("Patent Office" or "PTO") including the original patent application and subsequent communications between the Patent Office and the applicant.

| | |
|---|---|
| **Ordinary skill in the art** | The level of experience, education, and/or training generally possessed by those individuals who work in the area of the invention at the time of the invention. |
| **Patent Application** | The initial papers filed in the Patent Office by an applicant. These typically include a specification, drawings, claims and the oath (Declaration) of the applicant. |
| **Patent Examiners** | Personnel employed by the Patent Office having expertise in various technical areas who review (examine) patent applications to determine whether the claims of a patent application are patentable and the disclosure adequately describes the invention. |
| **Prior art** | Any information that is used to describe public, technical knowledge prior to the invention by applicant or more than a year prior to his/her application. |
| **Prior art references** | Any item of prior art (publication, patent or product) used to determine patentability. |
| **Specification** | The part of the patent application or patent that describes the invention, and may include drawings. The specification does not April 5, 2014define the invention, only the claims do. |