# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

ATELIERS DE LA HAUTE-GARONNE )
(French Corporation) and F2C2 SYSTEMS )
S.A.S.  (French Corporation), )
                                           )
                Plaintiffs, )
                                            )
                    v. )         Civil Action No.: 09-598-LPS
                                            )
BROETJE AUTOMATION-USA INC. )
(Delaware Corporation), BRÖTJE-AUTOMATION )
GMBH (German Corporation), )
                                            )
               Defendants. )

## FINAL JURY INSTRUCTIONS

## TABLE OF CONTENTS

|  |  | Page |
|---|---|---|
| **1.0** | **GENERAL INSTRUCTIONS – END OF TRIAL** | **1** |
| 1.1 | INTRODUCTION | 1 |
| 1.2 | DUTY OF THE JURY | 2 |
| 1.3 | EVIDENCE DEFINED | 3 |
| 1.4 | DIRECT AND CIRCUMSTANTIAL EVIDENCE | 5 |
| 1.5 | CONSIDERATION OF EVIDENCE | 6 |
| 1.6 | STATEMENTS OF COUNSEL | 7 |
| 1.7 | CREDIBILITY OF WITNESSES | 8 |
| 1.8 | NUMBER OF WITNESSES | 10 |
| 1.9 | EXPERT WITNESSES | 11 |
| 1.10 | DEPOSITION TESTIMONY | 12 |
| 1.11 | BURDENS OF PROOF | 13 |
| 1.12 | USE OF NOTES | 15 |
| **2.0** | **THE PARTIES AND THEIR CONTENTIONS** | **16** |
| 2.1 | THE PARTIES | 16 |
| 2.2 | THE PARTIES' CONTENTIONS | 17 |
| **3.0** | **PATENT CLAIMS** | **18** |
| 3.1 | SUMMARY OF PATENT ISSUES | 18 |
| 3.2 | THE PATENT LAWS | 19 |
| 3.3 | INFRINGEMENT OF PATENT CLAIMS | 20 |
| 3.4 | CLAIM CONSTRUCTION FOR THE CASE | 21 |

| | | |
|---|---|---|
| 3.5 | INDEPENDENT AND DEPENDENT CLAIMS | 24 |
| 3.6 | OPEN ENDED OR "COMPRISING" CLAIMS | 25 |
| **4.0** | **PATENT INFRINGEMENT** | **26** |
| 4.1 | PATENT INFRINGEMENT GENERALLY | 26 |
| 4.2 | DIRECT INFRINGEMENT | 27 |
| 4.3 | INDIRECT INFRINGEMENT - INDUCING PATENT INFRINGEMENT | 28 |
| 4.4 | INDIRECT INFRINGEMENT - CONTRIBUTORY INFRINGEMENT | 31 |
| 4.5 | INFRINGEMENT DESPITE ACCUSED INFRINGER'S IMPROVEMENTS | 32 |
| **5.0** | **WILLFUL INFRINGEMENT** | **33** |
| **6.0** | **PATENT INVALIDITY** | **35** |
| 6.1 | PRESUMPTION OF VALIDITY | 36 |
| 6.2 | ANTICIPATION - GENERALLY | 37 |
| 6.3 | ANTICIPATION - PREVIOUSLY KNOWN OR PUBLISHED | 38 |
| 6.4 | ANTICIPATION - INHERENCY | 39 |
| 6.5 | OBVIOUSNESS | 40 |
| 6.6 | OBVIOUSNESS - SCOPE AND CONTENT OF THE PRIOR ART | 42 |
| 6.7 | DIFFERENCES BETWEEN THE CLAIMED INVENTION AND THE PRIOR ART | 43 |
| 6.8 | OBVIOUSNESS - LEVEL OF ORDINARY SKILL | 45 |
| 6.9 | OBVIOUSNESS - OBJECTIVE CRITERIA CONCERNING OBVIOUSNESS | 46 |
| 6.10 | INDEFINITENESS | 48 |
| **7.0** | **TRADE DRESS INSTRUCTIONS** | **49** |

| | | |
|---|---|---|
| 7.1 | DEFINITION OF A TRADE DRESS | 49 |
| 7.2 | FUNCTIONALITY | 50 |
| 7.3 | THE PLAINTIFFS' BURDEN OF PROOF | 51 |
| 7.4 | INFRINGEMENT - ELEMENTS AND BURDEN OF PROOF - TRADE DRESS | 52 |
| 7.5 | OWNERSHIP AND PRIORITY | 53 |
| 7.6 | ACQUIRED DISTINCTIVENESS – SECONDARY MEANING | 54 |
| 7.7 | LIKELIHOOD OF CONFUSION | 56 |
| **8.0** | **UNFAIR COMPETITION** | **59** |
| **9.0** | **INTENTIONAL INTERFERENCE WITH PROSPECTIVE ECONOMIC RELATIONS** | **60** |
| 9.1 | ELEMENTS OF CLAIM | 60 |
| **10.0** | **PATENT DAMAGES** | **61** |
| 10.1 | PATENT DAMAGES GENERALLY | 61 |
| 10.2 | DATE PATENT DAMAGES MAY BEGIN AND END | 63 |
| 10.3 | METHODS FOR COMPUTING PATENT DAMAGES | 64 |
| 10.4 | ENTIRE MARKET VALUE RULE | 65 |
| 10.5 | PATENT LOST PROFITS – BUT-FOR TEST | 66 |
| 10.6 | PATENT LOST PROFITS FROM LOST SALES (PANDUIT FACTORS) | 67 |
| 10.7 | LOST PROFITS – DEMAND | 68 |
| 10.8 | LOST PROFITS – ACCEPTABLE NON-INFRINGING SUBSTITUTES | 69 |
| 10.9 | LOST PROFITS – CAPACITY | 70 |
| 10.10 | COLLATERAL SALES – CONVOYED OR DERIVATIVE SALES | 71 |

10.11   LOST PROFITS - DOUBTS RESOLVED AGAINST INFRINGER          72

10.12   PATENT DAMAGES INTEREST                                   73

**11.0    NON-PATENT DAMAGES                                      74**

11.1    DAMAGES FOR TRADE DRESS INFRINGEMENT
AND UNFAIR COMPETITION -- GENERALLY                               74

11.2    DAMAGES FOR TRADE DRESS INFRINGEMENT AND UNFAIR
COMPETITION – ACTUAL DAMAGES                                      75

11.3    DAMAGES FOR TRADE DRESS
INFRINGEMENT AND UNFAIR COMPETITION – BROETJE'S PROFITS           76

11.4    DAMAGES FOR TRADE DRESS INFRINGEMENT:
INTENTIONAL INFRINGEMENT                                          77

11.5    DAMAGES FOR TRADE DRESS INFRINGEMENT AND
STATE UNFAIR COMPETITION: PUNITIVE DAMAGES                        78

11.6    STATUTE OF LIMITATIONS: TRADE DRESS INFRINGEMENT          80

11.7    STATUTE OF LIMITATIONS: TRADE DRESS INFRINGEMENT
- DELAYED DISCOVERY                                               81

11.8    STATUTE OF LIMITATIONS: FEDERAL LAW UNFAIR COMPETITION    82

11.9    STATUTE OF LIMITATIONS: FEDERAL LAW UNFAIR COMPETITION:
DELAYED DISCOVERY                                                 83

11.10   STATUTE OF LIMITATIONS: STATE LAW UNFAIR COMPETITION      84

11.11   STATUTE OF LIMITATIONS: STATE LAW UNFAIR COMPETITION:
DELAYED DISCOVERY                                                 85

11.12   DAMAGES FOR INTENTIONAL INTERFERENCE WITH
PROSPECTIVE ECONOMIC ADVANTAGE: GENERALLY                         86

11.13   DAMAGES FOR INTENTIONAL INTERFERENCE WITH
PROSPECTIVE ECONOMIC ADVANTAGE – COMPENSATORY
DAMAGES                                                           87

11.14   DAMAGES FOR INTENTIONAL INTERFERENCE WITH
PROSPECTIVE ECONOMIC ADVANTAGE: PUNITIVE DAMAGES                  88

11.15   STATUTE OF LIMITATIONS: INTENTIONAL INTERFERENCE
       WITH PROSPECTIVE ECONOMIC ADVANTAGE        91

11.16   STATUTE OF LIMITATIONS: INTENTIONAL INTERFERENCE WITH
       PROSPECTIVE ECONOMIC ADVANTAGE – DELAYED DISCOVERY    92

11.17   NO DUPLICATIVE DAMAGES - NON-PATENT DAMAGES       93

**12.0   CLOSING STATEMENT – DAMAGES**       **94**

**13.0   FOREIGN LAW**       **95**

**14.0   DELIBERATION AND VERDICT**       **96**

14.1   INTRODUCTION       96

14.2   UNANIMOUS VERDICT       97

14.3   DUTY TO DELIBERATE       98

14.4   DO NOT CONSIDER WHAT WILL HAPPEN AFTER TRIAL       99

14.5   COURT HAS NO OPINION       100

**1.0    GENERAL INSTRUCTIONS – END OF TRIAL**

**1.1    INTRODUCTION**

Members of the jury, now it is time for me to instruct you about the law that you must follow in deciding this case.

I will start by explaining your duties and the general rules that apply in every civil case.

I will explain some rules that you must use in evaluating particular testimony and evidence.

I will then explain the positions of the parties and the law you will apply in this case.

Finally, I will explain the rules that you must follow during your deliberations in the jury room and the possible verdicts that you may return.

Please listen very carefully to everything I say.

You will have your written copy of these instructions with you in the jury room for your reference during your deliberations.  You will also have a verdict form, which will list the questions that you must answer to decide this case.

1

## 1.2    DUTY OF THE JURY

You have two main duties as jurors.  The first one is to decide what the facts are from the evidence you saw and heard here in court.  Deciding what the facts are is your job, not mine, and nothing that I have said or done during this trial was meant to influence your decision about the facts in any way.

Your second duty is to take the law that I give you, apply it to the facts, and decide under the appropriate burden of proof, which party should prevail on each of the issues presented.  It is my job to instruct you about the law, and you are bound by the oath that you took at the beginning of the trial to follow the instructions that I give you, even if you personally disagree with them.  This includes the instructions that I gave you before and during the trial, and these instructions.  All of the instructions are important, and you should consider them together as a whole.

Perform these duties fairly.  Do not let any bias, sympathy or prejudice that you may feel toward one side or the other influence your decision in any way.

2

### 1.3     EVIDENCE DEFINED

You must make your decision based only on the evidence that you saw and heard here in court.  Do not let rumors, suspicions, or anything else that you may have seen or heard outside of court influence your decision in any way.

The evidence in this case includes only what the witnesses said while they were testifying under oath (including deposition testimony that has been played or read to you), the exhibits that I allowed into evidence, and the stipulations that the lawyers agreed to, which I read to you at the beginning of this case, just after the opening statements.

Nothing else is evidence.  The lawyers' statements and arguments are not evidence.  Their questions and objections are not evidence.  My legal rulings are not evidence.  Any of my comments and questions are not evidence.  The notes taken by any juror are not evidence.

During the trial I may have not let you hear the answers to some of the questions that the lawyers asked.  I also may have ruled that you could not see some of the exhibits that the lawyers wanted you to see.  You must follow my orders and completely ignore all of these things.  Do not even think about them.  Do not speculate about what a witness might have said or what an exhibit might have shown.  These things are not evidence, and you are bound by your oath not to let them influence your decision in any way.

Further, sometimes I may have ordered you to disregard things that you saw or heard, or struck things from the record.  You must follow my instructions to completely disregard such things you saw or heard, and completely ignore those things struck from the record.  Do not even think about them.  These things are not evidence, and you are bound by your oath not to let them

3

influence your decision in any way.

Make your decision based only on the evidence, as I have defined it here, and nothing

else.

## 1.4     DIRECT AND CIRCUMSTANTIAL EVIDENCE

You may have heard the terms "direct evidence" and "circumstantial evidence."

Direct evidence is simply evidence like the testimony of an eyewitness which, if you believe it, directly proves a fact.  If a witness testified that he saw it raining outside, and you believe him, that would be direct evidence that it was raining.

Circumstantial evidence is simply a chain of circumstances that indirectly proves a fact. If someone walked into the courtroom wearing a raincoat covered with drops of water and carrying a wet umbrella, that would be circumstantial evidence from which you could conclude that it was raining.

It is your job to decide how much weight to give the direct and circumstantial evidence. The law makes no distinction between the weight that you should give to either one, nor does it say that one is any better evidence than the other.  You should consider all the evidence, both direct and circumstantial, and give it whatever weight you believe it deserves.

5

**1.5     CONSIDERATION OF EVIDENCE**

You should use your common sense in weighing the evidence.  Consider it in light of

your everyday experience with people and events, and give it whatever weight you believe it

deserves.  If your experience tells you that certain evidence reasonably leads to a conclusion, you

are free to reach that conclusion.

**1.6     STATEMENTS OF COUNSEL**

A further word about statements and arguments of counsel.  The attorneys' statements and arguments are not evidence.  Instead, their statements and arguments are intended to help you review the evidence presented.  If you remember the evidence differently from the attorneys, you should rely on your own recollection.

The role of attorneys is to zealously and effectively advance the claims of the parties they represent within the bounds of the law.  An attorney may argue all reasonable conclusions from evidence in the record.  It is not proper, however, for an attorney to state an opinion as to the truth or falsity of any testimony or evidence.  What an attorney personally thinks or believes about the testimony or evidence in a case is not relevant, and you are instructed to disregard any personal opinion or belief concerning testimony or evidence that an attorney has offered during opening or closing statements, or at any other time during the course of the trial.

### 1.7     CREDIBILITY OF WITNESSES

You are the sole judges of each witness's credibility.  You should consider each witness's means of knowledge; strength of memory; opportunity to observe; how reasonable or unreasonable the testimony is; whether it is consistent or inconsistent; whether it has been contradicted; the witness's biases, prejudices or interests; the witness's manner or demeanor on the witness stand; and all circumstances that, according to the evidence, could affect the credibility of the testimony.  If you find the testimony to be contradictory, you must try to reconcile it, if reasonably possible, so as to make one harmonious story of it all.  But if you can't do this, then it is your duty and privilege to believe the testimony that, in your judgment, is most believable and disregard any testimony that, in your judgment, is not believable.

In determining the weight to give to the testimony of a witness, you should ask yourself whether there was evidence tending to prove that the witness testified falsely about some important fact and whether there was evidence that at some other time the witness said or did something, or failed to say or do something, that was different from the testimony the witness gave at the trial.  You have the right to distrust such witness's testimony in other particulars and you may reject all or some of the testimony of that witness or give it such credibility as you may think it deserves.

You should remember that a simple mistake by a witness does not necessarily mean that the witness was not telling the truth.  People may tend to forget some things or remember other things inaccurately.  If a witness has made a misstatement, you must consider whether it was simply an innocent lapse of memory or an intentional falsehood, and that may depend upon whether it concerns an important fact or an unimportant detail.

This instruction applies to all witnesses.

### 1.8    NUMBER OF WITNESSES

One more point about the witnesses.  Sometimes jurors wonder if the number of witnesses who testified makes any difference.

Do not make any decisions based on the number of witnesses who testified.  What is more important is how believable the witnesses were, and how much weight you think their testimony deserves.  Concentrate on that, not the numbers.

### 1.9    EXPERT WITNESSES

Expert testimony is testimony from a person who has a special skill or knowledge in some science, profession, or business.  This skill or knowledge is not common to the average person but has been acquired by the expert through special study or experience.

In weighing expert testimony, you may consider the expert's qualifications, the reasons for the expert's opinions, and the reliability of the information supporting the expert's opinions, as well as the factors I have previously mentioned for weighing testimony of any other witness. Expert testimony should receive whatever weight and credit you think appropriate, given all the other evidence in the case.  You are free to accept or reject the testimony of experts, just as with any other witness.

**1.10    DEPOSITION TESTIMONY**

A deposition is the sworn testimony of a witness taken before trial.  The witness is placed under oath and swears to tell the truth, and lawyers for each party may ask questions.  A court reporter is present and records the questions and answers.  The deposition may also be recorded on videotape.

During the trial, certain testimony was presented to you by the reading of a deposition transcript or the playing of video excerpts from a deposition.  Deposition testimony is entitled to the same consideration and is to be judged, insofar as possible, in the same way as if the witness had been present to testify.

### 1.11   BURDENS OF PROOF

AHG is accusing the Broetje Parties of patent infringement, trade dress infringement, unfair competition, and intentional interference with prospective economic advantage.  AHG has the burden of proving its claims and the amount of its money damages, if any, by what is called a preponderance of the evidence.  That means AHG has to produce evidence which, when considered in light of all of the facts, leads you to believe that what AHG claims is more likely true than not.  To put it differently, if you were to put the evidence of AHG and the Broetje Parties concerning infringement on opposite sides of a scale, the evidence supporting AHG's claims would have to make the scales tip somewhat on its side in each instance.  If the scale should remain equal or tip in favor of the Broetje Parties, you must find for the Broetje Parties. If you find that the Broetje Parties infringed one or more of the patent claims that have been asserted in this case, then as a separate question, AHG has the burden of proving its additional contention that the infringement was willful by clear and convincing evidence.  Clear and convincing evidence is evidence that produces an abiding conviction that the truth of a factual contention is highly probable.  Proof by clear and convincing evidence is, thus, a higher burden than proof by a preponderance of the evidence.

In this case, in addition to denying AHG's claims, the Broetje Parties assert that all of the Asserted Patents are invalid.  The Asserted Patents, however, are presumed to be valid.  The Broetje Parties have the burden of proving that the Asserted Patents are invalid by clear and convincing evidence.  As I just mentioned, clear and convincing evidence is evidence that produces an abiding conviction that the truth of a factual contention is highly probable.  Proof by clear and convincing evidence is, thus, a higher burden than proof by a preponderance of the

13

evidence.

Those of you familiar with criminal cases will have heard the term "proof beyond a reasonable doubt." That burden does not apply in a civil case and you should, therefore, put it out of your mind in considering whether or not AHG or the Broetjes Parties have met their burden of proof.

14

**1.12    USE OF NOTES**

You may use notes taken during trial to assist your memory.  However, you should use caution in consulting your notes.  There is always a tendency to attach undue importance to matters that you have written down.  Some testimony that is considered unimportant at the time presented, and thus not written down, takes on greater importance later on in the trial in light of all the evidence presented.  Therefore, you are instructed that your notes are only a tool to aid your own individual memory, and you should not compare notes with other jurors in determining the content of any testimony or in evaluating the importance of any evidence.  Your notes are not evidence, and are by no means a complete outline of the proceedings or a list of the highlights of the trial.  You should not be overly influenced by your notes or those of your fellow jurors.  Above all, your memory should be the greatest asset when it comes time to deliberate and render a decision in this case.

**2.0     THE PARTIES AND THEIR CONTENTIONS**

**2.1     THE PARTIES**

I will now review for you the parties in this action, and the positions of the parties that you will have to consider in reaching your verdict.

The plaintiffs are Ateliers de la Haute-Garonne and F2C2 Systems S.A.S.  When I refer to the plaintiffs collectively, I will refer to them as "AHG."

The defendants in this case are Broetje Automation-USA Inc. and Brötje-Automation GmbH.  When I refer to the defendants collectively, I will refer to them as "Broetje" or "the Broetje Parties."

AHG is the owner of U.S. Patent Nos. 5,143,216 and 5,011,339.  I will refer to these patents as the '216 and '339 patents, respectively, or collectively as the "AHG patents" or the "Asserted Patents."

## 2.2    THE PARTIES' CONTENTIONS

AHG contends that Broetje's rivet dispensing cassettes infringe claims 1, 2, and 6 of the '339 patent, and claims 1 and 2 of the '216 patent.  These claims may be referred to as the "asserted claims."

Broetje contends that its rivet dispensing cassettes do not infringe the asserted claims of the '339 and '216 patents.  Broetje further contends that the asserted claims of the '339 and '216 patents are invalid.

AHG also contends that Broetje's cassettes infringe on AHG's trade dress, that Broetje unfairly competes with AHG through its manufacture and sale of cassettes, and that Broetje intentionally interfered with the AHG's prospective economic advantage with respect to such cassettes.  Broetje denies these claims.

17

**3.0     PATENT CLAIMS**

**3.1     SUMMARY OF PATENT ISSUES**

I will now summarize the patent issues that you must decide and for which I will provide instructions to guide your deliberations.  You must decide the following main issues:

1.      Whether AHG has proven by preponderance of the evidence that the Broetje Parties' Accused Products infringed any of claims 1, 2, or 6 of the '339 patent, or claims 1 or 2 of the '216 patent, either directly or indirectly.

2.      Whether AHG has proven by a preponderance of the evidence that the Broetje Parties induced or contributed to the infringement by a third party of any of claims 1, 2, or 6 of the '339 patent.

3.      Whether AHG has proven by clear and convincing evidence that the Broetje Parties willfully infringed any of claims 1, 2, or 6 of the '339 patent, or claims 1 or 2 of the '216 patent.

4.      Whether the Broetje Parties have proven by clear and convincing evidence that any of claims 1, 2, or 6 of the '339 patent, or claims 1 or 2 of the '216 patent, are invalid due to anticipation, obviousness, or indefiniteness.

**3.2     THE PATENT LAWS**

At the beginning of the trial, I gave you some general information about patents and the patent system and a brief overview of the patent laws relevant to this case.  I will now give you more detailed instructions about the patent laws that specifically relate to this case.  If you would like to review my instructions at any time during your deliberations, you will have your copy available to you in the jury room.

**3.3      INFRINGEMENT OF PATENT CLAIMS**

Before you can decide many of the issues in this case, you will need to understand the role of patent "claims."

The claims of a patent are the numbered paragraphs at the end of the patent.  The claims are important because it is the words of the claims that define what a patent covers.  Only the claims of a patent can be infringed.  Each claim is a separate statement of the patented invention, and each of the Asserted Claims must be considered individually, comparing that claim to a particular product.

In patent law, the requirements of a claim are often referred to as "claim elements" or "claim limitations."  When a thing (such as a product) meets each and every requirement of a claim, the claim is said to "cover" that thing, and that thing is said to "fall" within the scope of that claim.

The law says that it is my role to define the terms of the claims and it is your role to apply my definitions to the issues that you are asked to decide in this case.  Therefore, I will explain to you the meaning of some of the words of the claims in this case.  In doing so, I will explain some of the requirements of the claims and you must accept my definitions of these words in the claims as correct.

It is your job to take these definitions and apply them to the issues you are deciding, such as infringement and validity.

### 3.4      CLAIM CONSTRUCTION FOR THE CASE

It is the Court's duty under the law to define what the patent claims mean.  I have

made my determinations and I will now instruct you on the meaning of claim terms.  You must

use the meaning that I give you for each claim term to make your decision as to whether the

claim is infringed or invalid, and you must apply the same meaning for purposes of both your

infringement and your invalidity analyses.  You must ignore any different definitions used by the

witnesses or the attorneys.  You should not take my definition of the language of the claims as an

indication that I have a view regarding how you should decide the issues that you are being

asked to decide, such as infringement and validity.  For a claim term for which I have not

provided you with a definition, you should apply the plain and ordinary meaning.  These issues

are yours to decide.

I instruct you that the following claim terms have the following definitions:

The following words and groups of words from the '339 patent claims have the following

meanings:

1.      The term **"shape corresponding to the transverse section of the greatest**

**diameter of the pieces"** means "the shape of the hollow center of the tube is compatible with

the greatest diameter of the pieces."

2.      The term **"a peripheral guiding"** means "provides for guiding of the pieces

along the internal surface of the tube."

3.      The term **"arranging the pieces one after another in the interior of the tube**

**(2) with their axes of revolution extending along the longitudinal axis of said tube"** means

"pieces inserted one after another with their axes of revolution extending in the direction of the

21

length of the tube."

4.      The term **"longitudinal passageway (2b) . . .  opening into the hollow center (2a)"** means "a passageway which can be of any hollow shape, regardless of the cross-sectional of the tube, extending in the direction of the length of the tube."

5.      The term **"the spaces (E) between the pieces"** means "the opening, if any, separating the pieces."

6.      The term **"linear grooves (2b)"** means "passageways extending along the parallel axis of the tube."

7.      The term **"grooves"** or **"grooves (2b)"** means "passageways."

8.      The term **"stop members (3,4)"** and **"stop member 4"** mean "components at the ends of the tube that retain the pieces."

The following words and groups of words from the '216 patent have the following definitions:

1.      The term **"aligned one after another"** means "pieces are in line one after the other."

2.      The term **"grooves 2(b) . . .  to open into a hollow center"** means "any passageway, regardless of the cross-sectional shape of the tube, extending along the wall of the tube, this passageway being able to be linear, helical, etc.  and opening into the hollow center of the tube."

3.      The term **"stop members (3,4)"** means "components at the ends of the tube that retain the pieces."

4.      The term **"arranged in a column"** means "rivets placed one after the other in a

22

tube."

5.      The term **"transverse cross section of the heads correspond to the transverse cross section of the tube such that the cross sectional area of the heads substantially equals the cross sectional area of the tube"** means "the shape of the head of the rivet is compatible with the shape of the hollow center of the tube such that the cross sectional area of the head of the rivet is of sufficient size as compared to the cross sectional area of the hollow core of the tube such that there is sufficient space between the rivet and the surface of the hollow core to permit the rivet to move without difficulty from upstream to downstream as a result of the compressed fluid."

6.      The term **"grooves (2b)"** means "passageways."

23

### 3.5    INDEPENDENT AND DEPENDENT CLAIMS

This case involves two types of patent claims: independent claims and dependent claims.

An independent claim sets forth all of the requirements that must be met in order to be covered by that claim.  Thus, it is not necessary to look at any other claim to determine what an independent claim covers.  In this case, Claim 1 of the '339 patent and Claim 1 of the '216 patent are independent claims.

The remaining Asserted Claims are dependent claims.  A dependent claim does not itself recite all of the requirements of the claim but refers to another claim or claims for some of its requirements.  In this way, the claim "depends" on another claim or claims.  A dependent claim incorporates all of the requirements of the claims to which it refers.  The dependent claim then adds its own additional requirements.  To determine what a dependent claim covers, it is necessary to look at both the dependent claim and any other independent claims to which it refers.

### 3.6     OPEN ENDED OR "COMPRISING" CLAIMS

The beginning portion, or preamble, of several of the Asserted Claims has the word "comprising."  The word "comprising" means "including the following but not excluding others."  A claim that uses the word "comprising" or "including" is not limited to products having only the elements that are recited in the claim, but also covers products that have additional elements.

If you find, for example, that the Accused Products include all of the elements of a particular claim, the fact that the Accused Products might include additional elements would not avoid infringement of the claim.

**4.0    PATENT INFRINGEMENT**

**4.1    PATENT INFRINGEMENT GENERALLY**

I will now instruct you on the rules you must follow when deciding whether AHG has proven by a preponderance of the evidence that the Broetje Parties infringed the Asserted Claims.

Patent law gives the owner of a valid patent the right to keep others from making, using, selling, or offering to sell a patented product within the United States during the term of the patent.  The claims of AHG's patents each specifically define a particular type of method and apparatus for dispensing and storing rivets.  Any person or business entity that has made, used, sold, or offered to sell a patented product in the United States during the term of the patent, without the patent owner's permission, infringes the patent, so long as the patent is not found to be invalid.

To prove infringement, AHG must prove by a preponderance of the evidence that each Accused Product, standing alone, contains each and every one of the elements of the patent claim that is asserted against that product.  If a particular product does not contain each and every element of the claim, you must find that the product does not infringe.

If, as here, the patent owner asserts multiple patent claims against the same product, then you must compare each claim separately against the product to determine whether the product infringes that individual patent claim.

26

**4.2     DIRECT INFRINGEMENT**

To prove direct infringement, AHG must prove that it is more probable than not that one of the Broetje Parties' Accused Products includes every requirement in at least one of the Asserted Claims.  The presence of other elements beyond those claimed does not avoid infringement, as long as each and every claimed element is present in the Accused Product.  Additionally, a component or feature of the Accused Products can be part of a larger integral structure (a single structure that has two or more connected parts) and still satisfy a claim requirement.  In such a case, the remainder of the integral structure is considered extra structure and is irrelevant to whether the claim requirement is satisfied by the Accused Products.  However, if the Accused Product omits a single requirement recited in one of the Asserted Claims, then that Accused Product does not directly infringe that claim.

For direct infringement, AHG is not required to prove that the Broetje Parties intended to infringe or knew of the patent.

27

### 4.3    INDIRECT INFRINGEMENT - INDUCING PATENT INFRINGEMENT

A party induces patent infringement if it cause, urges or encourages another to infringe a claim of the patent which it is aware of or of which it is willfully blind.  Inducement to infringe a claim cannot occur unintentionally.  This is different from direct infringement, which, as I have told you, can occur unintentionally.

AHG alleges that the Broetje Parties are liable for infringement by actively inducing others to directly infringe the '339 patent.  More particularly, AHG asserts that the Broetje Parties induced patent infringement after they became aware of the '339 patent.  To be liable for inducement to infringe, the accused inducer must have known of the patent and encouraged or instructed another person how to use a product in a manner that you, the jury, find infringes the asserted claims and must have had knowledge, or have acted with willful blindness, that the induced acts constituted patent infringement.  Willful blindness exists where an alleged inducer believed there was a high probability that its acts, if taken, would constitute infringement, but the alleged inducer deliberately avoided confirming that belief.

As with direct infringement, you must determine whether there has been active inducement on a claim-by-claim basis.

The Broetje Parties are liable for active inducement of infringement of a claim only if AHG proves by a preponderance of the evidence that:

1.    The acts actually carried out by the third party directly infringed the claim;

2.    The Broetje Parties took action during the time the '339 patent was in force intending to cause the infringing acts by the third party; and

3.    The Broetje Parties were aware of the '339 patent and: (i) knew that the acts, if

28

taken, would constitute infringement of that patent; or (ii) the Broetje Parties believed there was

a high probability that the acts, if taken, would constitute infringement of the '339 patent but

deliberately avoiding confirming that belief.

      In order to establish active inducement of infringement, it is not sufficient that the third

party directly infringed the claim.  Nor is it sufficient that the Broetje Parties were aware of the

act or acts by the third party that allegedly constitute the direct infringement.  Rather, you must

find that the Broetje Parties specifically intended that the third party infringe the '339 patent or

that the Broetje Parties believed there was a high probability the third party would infringe the

'339 patent, but remained willfully blind to the infringing nature of the third party's acts, in

order to find inducement of infringement.

      For example – assuming all of the other requirements of inducing infringement that I

have described to you are satisfied – an accused infringer can indirectly infringe the patent-in-suit

by selling the accused product with instructions leading end-users to use the product as

claimed in the patent, since it is inferred that the end-users follow those instructions with respect

to the accused product.

      When considering whether the Broetje Parties knew, or acted with willful blindness, that

the induced actions would constitute infringement, you may consider all of the circumstances,

including whether or not the Broetje Parties obtained the advice of a competent lawyer.  There is

no affirmative duty to seek opinion of counsel regarding infringement.  However, opinion of

counsel evidence – or lack of such evidence – may be probative of whether the Broetje Parties

knew, or acted with willful blindness, that its actions would cause direct infringement.  While

the decision not to obtain an opinion of counsel may be probative circumstantial evidence that a

defendant knew, or acted with willful blindness, that its action would cause direct infringement, that fact cannot replace any of the requirements to prove inducement.

If you find that no claim of the '339 patent has been directly infringed, you cannot find the Broetje Parties liable for inducement.

**4.4      INDIRECT INFRINGEMENT – CONTRIBUTORY INFRINGEMENT**

Contributory infringement occurs when a party with knowledge of the patent supplies a part, or a component, to another for use in a product, machine, or process that infringes a patent claim.  Contributory infringement arises only if one who received the component actually infringes a patent claim.

AHG asserts that the Broetje Parties have contributed to another's infringement of the '339 patent.  In order to prove contributory infringement, AHG must show:

1.      The Broetje Parties sell, offer to sell, or import within the United States a component for use in a process that infringes a claim of the '339 patent during the time the '339 patent is in force;

2.      The component is a significant part of the invention of at least one claim of the '339 patent, and the Broetje Parties knew that the component was especially made to be used in a manner which infringed one or more of the claims of the '339 patent; and

3.      The component does not have a significant non-infringing use.

All three of the requirements above must be proven by direct or circumstantial evidence, by a preponderance of the evidence, before you may find that the Broetje Parties contributed to patent infringement.  As with direct infringement, you must determine contributory infringement on a claim-by-claim basis, for each defendant.

31

### 4.5    INFRINGEMENT DESPITE ACCUSED INFRINGER'S IMPROVEMENTS

Whether or not an Accused Product represents an improvement over the inventions defined in AHG's patent claims does not determine whether or not that product can infringe the asserted patent claims.  As long as an accused product includes all of the elements of at least one of the asserted patent claims, then the patent claim is infringed by the Accused Product despite any improvements.

32

**5.0    WILLFUL INFRINGEMENT**

AHG alleges that the Broetje Parties infringed the '339 patent and the '216 patent

willfully.  If you have decided that the Broetje Parties have infringed one or more of the

Asserted Claims in the '339 patent or the '216 patent, you must go on and address the additional

issue of whether or not this infringement was willful.

Willfulness requires you to determine by clear and convincing evidence that the Broetje

Parties acted recklessly.  To prove that the Broetje Parties acted recklessly, AHG must prove two

things by clear and convincing evidence.

The first part of the test is objective: AHG must persuade you that the Broetje Parties

acted despite an objectively high likelihood that its actions would infringe a valid patent.  In

making this determination, you may not consider the Broetje Parties' state of mind.  Legitimate

or credible defenses to infringement, even if not ultimately successful, demonstrate a lack of

recklessness.

Only if you conclude that the Broetje Parties' conduct was reckless do you need to

consider the second part of the test.  The second part of the test depends on the Broetje Parties'

state of mind.  AHG must persuade you that the Broetje Parties actually knew or should have

known that their actions constituted an unjustifiably high risk of infringement of a valid patent.

To determine whether the Broetje Parties had this state of mind, consider all facts, which

may include, but are not limited to:

1.        Whether or not the Broetje Parties acted in accordance with the standards of

commerce for their industry;

2.        Whether or not the Broetje Parties intentionally copied a product of AHG that is

covered by the patents in suit;

3.      Whether or not there is a reasonable basis to believe that the Broetje Parties did not infringe or had a reasonable defense to infringement; and

4.      Whether or not the Broetje Parties made a good faith effort to avoid infringing the patents in suit, for example, whether the Broetje Parties attempted to design around the patents in suit.

**6.0    PATENT INVALIDITY**

Patent invalidity is a defense to patent infringement.  Even though the United States Patent Office has allowed the claims of a patent, you have the ultimate responsibility for deciding whether or not the claims of the Asserted Patents are valid.

For a patent to be valid, the subject matter claimed in the individual claims of the patent must be new and non-obvious.  A patent cannot take away from the right of anyone who wants to use what was already known or would have been obvious to those of skill in the art at the time when the invention was made.

The Broetje Parties have challenged the validity of the Asserted Patents.  In making your determination as to invalidity, you should consider each claim separately.

**6.1      PRESUMPTION OF VALIDITY**

The granting of a patent by the Patent Office carries with it the presumption that the patent's subject matter is new, useful, and constitutes an advance that was not, at the time the invention was made, obvious to one of ordinary skill in the art.  The law presumes that the Patent Office acted correctly in issuing the patent.  Nevertheless, when the validity of a patent has been put at issue as part of patent litigation, it is the responsibility of the jury to review what the Patent Office has done consistent with the Court's instructions on the law.

The Broetje Parties' burden of proof remains exactly the same regardless of whether the references on which the Broetje Parties are relying to invalidate a patent have previously been before the Patent Examiner.  Thus, the Broetje Parties have the burden of proving invalidity of each patent claim by clear and convincing evidence.

**6.2     ANTICIPATION — GENERALLY**

A person cannot obtain a patent on an invention if someone else has already made the same invention.  If the invention is not new, we say that it was "anticipated" by prior art.  Prior art is the legal term used to describe what others had done in the field before the invention was made.  Prior art is the general body of knowledge in the public domain, such as articles or other patents before the invention was made.  It is not necessary that the prior art has been available to every member of the public.  It must have been available, without restriction, to that segment of the public most likely to avail itself of the prior art's contents.

An invention that is "anticipated" by the prior art is not entitled to patent protection.  In order to prove that an invention is "anticipated," a party must prove by clear and convincing evidence that a single piece of prior art describes or discloses all of the elements of the claimed invention.

37

### 6.3     ANTICIPATION — PREVIOUSLY KNOWN OR PUBLISHED

The Broetje Parties contend that the asserted claims of the Asserted Patents are invalid because all elements of each asserted claim existed in a single device or method that predates the claimed invention, or were described in a single previous publication or patent that predates the claimed invention.  In patent law, such previous device, method, publication or patent is called a "prior art reference."  If a patent claim was disclosed by a prior art reference, we say it is "anticipated" by a prior art reference.  The Broetje Parties must prove by clear and convincing evidence that the claim was anticipated.

The disclosure in the prior art reference does not have to be in the same words as the claim.  Instead, it is sufficient if all requirements of the claim are in the prior art, either stated or necessarily implied, so that someone of ordinary skill in the field looking at that one reference would be able to make and use at least one embodiment of the claimed invention.

To meet this requirement the Broetje Parties must prove that the prior art reference would allow a person of ordinary skill in the art to practice the claimed invention without undue experimentation.

38

**6.4    ANTICIPATION — INHERENCY**

In determining whether the single item of prior art anticipates a patent claim, you should take into consideration not only what is expressly disclosed in the particular item of prior art, but also what is inherently present or disclosed in that prior art or what inherently results from its practice.  Prior art inherently anticipates a patent claim if the missing element or feature would be the natural result of following what the prior art teaches to persons of ordinary skill in the art.  A party claiming inherent anticipation must prove by clear and convincing evidence that the claim is inherently anticipated.  Evidence outside of the prior art reference itself may be used to show that the elements not expressly disclosed in the reference are actually present.  Mere probabilities are not enough.  It is not required, however, that persons of ordinary skill actually recognized the inherent disclosure at the time the prior art was first known or used.  Thus, the prior use of the patented invention that was unrecognized and unappreciated can still be an invalidating anticipation.

### 6.5    OBVIOUSNESS

In order to be patentable, an invention must not have been obvious to a person of ordinary skill in the art at the time the invention was made.  A claimed invention is invalid as obvious if it would have been obvious to a person of ordinary skill in the field of the invention at the time the invention was made.

Obviousness must be shown by clear and convincing evidence considering one or more than one item of prior art.  Obviousness is determined from the perspective of a person of ordinary skill in the field of the invention.  The issue is not whether the claimed invention would be obvious to you as layman, to me as a judge, or to a genius in the art, but whether it would have been obvious to one of ordinary skill in the art at the time it was made.  Thus, the question is, would it have been obvious for a skilled person who knew of the prior art to make the claimed invention?  If the answer to that question is yes, then the patent claims are invalid.  The Broetje Parties have the burden of proving obviousness by the clear and convincing evidence standard.

The Broetje Parties contend that the Asserted Claims are invalid because the claimed inventions are obvious.

Keep in mind that the existence of each and every element of the claimed invention in the prior art does not itself prove obviousness.  Most, if not all, inventions rely on building blocks of prior art.  Accordingly, you must be careful not to determine obviousness using hindsight to reconstruct or piece together the invention; many true inventions can be seen as obvious after the fact.  You should not consider what is known today or what was learned from the teachings of the patent.  You should not use the patent as a road map for selecting and combining items of prior art.  You must put yourself in the place of a person of ordinary skill at the time the

40

invention was made.

You must also keep in mind that the test for obviousness is not whether or not it would have been obvious to try to make the invention, but rather, whether or not the invention would have been obvious to a person of ordinary skill in the inventor's field at the time the invention was made.  In determining whether or not these claims would have been obvious, you should make the following determinations:

First, what is the scope and content of the prior art?

Second, what differences, if any, are there between the invention of the claim of the patent and the prior art?

Third, what was the level of ordinary skill in the art at the time the invention was made?

Fourth, are there any objective indications of non-obviousness?

41

**6.6      OBVIOUSNESS—SCOPE AND CONTENT OF THE PRIOR ART**

As I have just instructed you, in arriving at your decision on the issue of whether or not the claimed inventions were obvious to one of ordinary skill in the art, you must first determine the scope and content of the prior art.  This means that you must determine what prior art is reasonably pertinent to the particular problem that the inventors faced.  Prior art is reasonably pertinent if it is in the same field as the claimed invention or is from another field that a person of ordinary skill would look to in trying to solve the problem the claimed invention was trying to solve.  The prior art may include any of the following items if received into evidence:

1.      patents that issued more than one year before the earliest of the effective filing date of the patents, which is December 8, 1988, or before the date of the invention of the Asserted Claims of a particular patent;

2.      publications having a date more than one year before the earliest of the effective filing date of the patent, or before the date of invention of the Asserted Claims of a particular patent;

3.      U.S. patents or published applications having a filing date prior to the date of invention of a particular patent;

4.      anything that was publicly known or used by others in the United States before the claimed invention was made; and

5.      anything that was in public use or on sale in the United States more than one year before the effective filing dates of the Asserted Patents.

### 6.7     DIFFERENCES BETWEEN THE CLAIMED INVENTION AND THE PRIOR ART

You must next consider the differences, if any, between the prior art and the claimed invention from the view of a person of ordinary skill in the art at the time of the invention.  Your analysis must determine the impact, if any, of such differences on the obviousness or non-obviousness of the invention as a whole and not merely some portion of it.

In analyzing the differences between the claimed invention and the prior art, you do not need to look for a precise teaching in the prior art directed to the subject matter of the claimed invention.  You may take into account the inferences and creative steps that a person of ordinary skill in the art would have employed in reviewing the prior art at the time of the invention.  For example, if the claimed invention combined elements known in the prior art and the combination yielded results that were predictable to a person of ordinary skill in the art at the time of the invention, then this evidence would make it more likely that the claim was obvious.

On the other hand, if the combination of known elements yielded unexpected or unpredictable results, or if the prior art teaches away from combining the known elements, then this evidence would make it more likely that the claim that successfully combined those elements was not obvious.

Importantly, a claim is not proved obvious merely by demonstrating that each of the elements was independently known in the prior art.  Most, if not all, inventions rely on building blocks long since uncovered, and claimed discoveries almost of necessity will likely be combinations of what is already known.  Therefore, you should consider whether a reason existed at the time of the invention that would have prompted a person of ordinary skill in the art in the

43

relevant field to combine the known elements in the way the claimed invention does.  The reason could come from the prior art, the background knowledge of one of ordinary skill in the art, the nature of the problem to be solved, market demand, or common sense.  Accordingly, you may evaluate whether there was some teaching, suggestion, or motivation to arrive at the claimed invention before the time of the claimed invention, although proof of this is not a requirement to prove obviousness.

      If you find that a reason existed at the time of the invention to combine the elements of the prior art to arrive at the claimed invention, this evidence would make it more likely that the claimed invention was obvious.

      Again, you must undertake this analysis separately for each claim that the Broetje Parties contend is obvious.

44

### 6.8     OBVIOUSNESS—LEVEL OF ORDINARY SKILL

Obviousness is determined from the perspective of a person of ordinary skill in the art to which the claimed invention pertains at the time the claimed invention was made.  This person is presumed to know all the prior art that you have determined to be reasonably relevant.  When faced with a problem, this ordinary skilled person is able to apply his or her experience and ability to the problem and also look to any available prior art to help solve the problem.

Factors to consider in determining the level of ordinary skill in the art include: (1) the educational level and experience of people working in the field; (2) the types of problems faced by workers in the art at the time of the invention and the solutions found to those problems; (3) the prior art patents, products or devices, and publications; and (4) the sophistication of the technology in the field at the time of the invention, including how rapid innovations were made in the art at the time of the invention.

AHG contends that a person of ordinary skill in the art to which the '339 patent and the '216 patent pertain would have at least three years of experience in the design of rivet dispensing systems or held a bachelor's degree in mechanical engineering.  The Broetje Parties contend that a person of ordinary skill in the art to which the '339 patent and the '218 patent pertain does not need to have any particular level of education.

### 6.9    OBVIOUSNESS — OBJECTIVE CRITERIA CONCERNING OBVIOUSNESS

In evaluating the issue of obviousness, you must also consider certain factors which, if established by AHG, may indicate that the invention would not have been obvious.  No factor alone is dispositive, and you must consider the obviousness or nonobviousness of the invention as a whole.  Some of these indications are:

1.     Commercial success or lack of commercial success of products that are used to practice the claims of the patent-in-suit;

2.     A long-felt need in the art which was satisfied by the invention of the patent-in-suit;

3.     Failed attempts by others to make the invention;

4.     Copying of the invention by others in the field;

5.     Unexpected results achieved by the invention;

6.     Praise of the invention by the infringer or others in the field;

7.     The taking of licenses under the patents by others;

8.     Expressions of surprise by experts and those skilled in the art at the making of the invention; and

9.     The patentee proceeded contrary to accepted wisdom of prior art.

However, there must be a connection between the evidence showing any of these factors and either the claimed invention, or the advantages that result from practicing the claimed invention, if this evidence is to be given weight by you in arriving at your conclusion on the obviousness issue.  For example, if commercial success of products that practice the Asserted

46

Patents is due to brand recognition, company goodwill, advertising, promotion, salesmanship or

the like, or is due to features of the product other than those claimed in the patent in suit, then

any commercial success may have no relation to the issue of obviousness.

**6.10    INDEFINITENESS**

The patent laws require the claims of a patent to be sufficiently definite that one skilled in the art can determine the precise limits of the claimed invention.  If a claim is found to be indefinite the claim is invalid.  The amount of detail required to be included in claims depends on the particular invention and the prior art, and is not to be evaluated in the abstract but in conjunction with the disclosure.  If the claims, read in light of the disclosure, reasonably apprise those skilled in the art of the proper scope of the invention, and if the language is as precise as the subject matter permits, then the claims are not indefinite.

Simply because some claim language may not be precise does not automatically render a claim invalid.  When a word or phrase of degree is used, it must be determined whether the patent disclosure provides some standard for measuring that degree.  One must then determine whether one of ordinary skill in the art would understand what is covered when the claim is read in light of the disclosure.  Even if one needed to experiment so as to determine the limits of the claims of the patent, that would not necessarily be a basis for holding the claims invalid.

The Broetje Parties contend that the asserted claims of the '339 patent are invalid for indefiniteness because the term "peripheral guiding" is indefinite, since a person of ordinary skill in the art cannot translate the definition of that term into a meaningfully precise claim scope. The Broetje Parties have the burden of establishing indefiniteness by clear and convincing evidence.

48

**7.0      TRADE DRESS INSTRUCTIONS**

**7.1      DEFINITION OF A TRADE DRESS**

Trade dress is the non-functional physical detail and design of a product or its packaging, which identifies the product's source and distinguishes it from the products of others.

Trade dress is the product's total image and overall appearance, and may include features such as size, shape, color, color combinations, texture, or graphics.  In other words, trade dress is the form in which a person presents a product or service to the market, its manner of display.

A trade dress is non-functional if, taken as a whole, the collection of trade dress elements is not essential to the product's use or purpose or does not affect the cost or quality of the product even though certain particular elements of the trade dress may be functional.

Trade dress concerns the overall visual impression created in the consumer's mind when viewing the non-functional aspects of the product and not from the utilitarian or useful aspects of the product.  In considering the impact of the non-functional aspects, which are often a complex combination of many features, you must consider the appearance of features together, rather than separately.

A person who uses the trade dress of another may be liable for damages.

49

## 7.2     FUNCTIONALITY

Only non-functional trade dress is protectable.

The term "functional" has a specific meaning in trade dress law.  Trade dress is not considered "functional" merely because the trade dress, or its components, perform useful functions.  Thus, for example, all bottles of perform the same function of holding a liquid, but this does not mean that the specific design chosen for a bottle is necessarily considered "functional" and unprotectable.

A design feature of a product is considered "functional" and thus unprotectable as trade dress if that design feature is essential to the use or purpose of the product or if it affects the cost or quality of the product.  Put another way, a feature is functional if the product works better because of that particular feature, such as a shape, texture, color design, etc.

In determining whether AHG's trade dress is functional, you should consider the trade dress as a whole.  A trade dress consisting of a combination of features may be nonfunctional and thus protectable, even though the combination includes functional features that, taken separately, would not be protectable.  However, where the combination as a whole is functional, the trade dress is not protectable.

**7.3     THE PLAINTIFFS' BURDEN OF PROOF**

In this case, the plaintiffs, AHG, contend that the defendant, Broetje, has infringed

AHG's trade dress.  AHG has the burden of proving by a preponderance of the evidence that it is

the owner of a valid trade dress and that Broetje infringed that trade dress.  Preponderance of the

evidence means that you must be persuaded by the evidence that it is more probably true than

not true that Broetje infringed AHG's trade dress.

**7.4   INFRINGEMENT—ELEMENTS AND BURDEN OF PROOF—TRADE DRESS**

On AHG's claim for trade dress infringement, AHG has the burden of proving by a preponderance of the evidence each of the following elements:

1.   that the product configuration of AHG's cassettes has acquired secondary meaning;

2.   that AHG owns the product configuration of its cassette as trade dress;

3.   that the product configuration of AHG's cassette is nonfunctional; and

4.   that Broetje used a product configuration for its cassettes that was similar to AHG's product configuration without AHG's consent in a manner that is likely to cause confusion among ordinary consumers as to the source, sponsorship, affiliation, or approval of Broetje's product configuration.

If you find that each of the elements on which AHG has the burden of proof has been proved, your verdict should be for AHG.  If, on the other hand, AHG has failed to prove any of these elements, your verdict should be for Broetje.

### 7.5     OWNERSHIP AND PRIORITY

One of the things AHG must prove is that AHG owns the chrome color of its cassette; the shape and size of its cassette; the shape, size, color and placement of the handle; the placement, size and shape of the white connectors; the clear case cover; and the overall look and feel of the cassette as trade dress.

AHG owns the chrome color of its cassette; the shape and size of its cassette; the shape, size, color and placement of the handle; the placement, size and shape of the white connectors; the clear case cover; and the overall look and feel of the cassette as a trade dress in the cassette if AHG used the trade dress in the United States in a manner that allowed consumers to identify the trade dress with AHG or its product before the Broetje Parties began to use the current product configuration on their rivet cassettes.

Among the factors you may consider are the volume of sales of AHG's product, the nature of AHG's sales and purchasers, the amount of AHG's advertising, and publicity relating to the product.

### 7.6    ACQUIRED DISTINCTIVENESS-SECONDARY MEANING

Only distinctive trade dress is protectable; generic trade dress is not.

A "generic" trade dress is a common or general trade dress for a product whose primary significance to the consuming public is to identity a class of similar products, regardless of who sells them. The consuming public consists of people who may buy or use, or consider buying or using, the product or similar products. For example, bear-shaped gummy candies are common in the candy industry and are generic shapes for this type of candy.

You should find that the trade dress at issue in this case is "distinctive" only if you find that it had acquired secondary meaning in the United States by the date the Broetje Parties first sold a product in the United States that AHG claims infringes that trade dress. I will now explain to you the idea of "secondary meaning." Secondary meaning distinguishes the goods it represents from similar goods offered by others and refers to the ability of trade dress to relay to the public that the product or service comes from a particular source. Trade dress acquires secondary meaning when it has been used in such a way that its primary significance in the minds of prospective purchasers is not the product itself but the identification of the product with a particular source. In addition to your common sense and common experience as citizens in the community, you may also consider the following factors in determining whether a particular trade dress has acquired secondary meaning: (1) AHG's advertising expenditures, measured primarily with regard to those for advertisements which highlight the supposedly distinctive, identifying feature; (2) length of use; (3) exclusivity of use;(4) the fact of copying; (5) customer surveys; (6) customer testimony; (7) the use of the trade dress in trade journals; (8) the size of the company; (9) the number of sales; (10) the number of customers; and, (11) actual confusion.

The presence or absence of any particular factor should not necessarily resolve whether AHG's trade dress had acquired secondary meaning.

AHG has the burden of proving that its trade dress had acquired a secondary meaning.

The mere fact that AHG may be using its trade dress, or that AHG may have begun using it before Broetje, does not mean that the trade dress had acquired secondary meaning.  There is no particular length of time that a trade dress must be used before it acquires secondary meaning.

### 7.7     LIKELIHOOD OF CONFUSION

I will suggest some factors you should consider in deciding likelihood of confusion.  The presence or absence of any particular factor that I suggest should not necessarily resolve whether there was a likelihood of confusion, because you must consider all relevant evidence in determining this.  As you consider the likelihood of confusion you should examine the following:

1.     *Strength or Weakness of AHG's Trade Dress*.  The more the consuming public recognizes AHG's trade dress as an indication of origin of AHG's rivet cassettes, the more likely it is that consumers would be confused about the source of the Broetje Parties' rivet cassettes if the Broetje Parties use a similar trade dress;

2.     *Similarity of AHG's trade dress and the Broetje Parties' product configuration*.  If the overall impression created by AHG's trade dress is similar to that created by the Broetje Parties' product configuration, there is a greater chance that consumers are likely to be confused by the Broetje Parties' product configuration;

3.     *Similarity of AHG's and the Broetje Parties' Goods or Services*.  If the Broetje Parties and AHG market the same or related kinds of rivet cassettes, there may be a greater likelihood of confusion about the source of rivet cassettes than otherwise;

4.     *Actual Confusion*.  If there is evidence of actual buyer confusion concerning AHG's trade dress and the Broetje Parties' product configuration, this strongly suggests a likelihood of confusion.  However, AHG need not produce evidence of actual buyer confusion in order for you to find that a likelihood of confusion exists;

5.     *The Broetje Parties' Intent in Adopting Their Product Configuration*.  Any

evidence that the Broetje Parties adopted their product configuration with the intent to cause confusion between their rivet cassettes and AHG's rivet cassettes should be weighed heavily in favor of a finding of likelihood of confusion if: (a) the Broetje Parties' intent to confuse or deceive is demonstrated by clear and convincing evidence, and (b) the rivet cassettes' labeling and marketing are also affirmatively deceiving.  On the other hand, any evidence of the Broetje Parties' good faith in seeking to avoid confusion (including the prominent use or placement of the Broetje Parties' name or trademarks on its rivet cassettes) should be weighed against a finding of likelihood of confusion;

6.      *Distribution Channels*.  If AHG's and the Broetje Parties' rivet cassettes are likely to be sold to the same or similar customers or through the same distribution channels, this increases the likelihood of confusion;

7.      *The Degree of Purchaser Care*.  The more costly the rivet cassettes, the more sophisticated, careful and discriminating the buyers are likely to be.  Thus, they may be less likely to be confused by similarities in AHG's trade dress and the Broetje Parties' product configuration;

8.      *The length of time the Broetje Parties have used their product configuration without evidence of actual confusion arising*;

9.      *The extent to which the targets of AHG's and the Broetje Parties' sales efforts are the same*;

10.     *The relationship of the goods in the minds of consumers because of the similarity of function*; and

11.     *Other*.  Other facts suggesting that the consuming public might expect AHG to

57

manufacture a product in Broetje's market, or that AHG is likely to expand into that market.

Although you should consider all of the above factors as part of making your decision, the above list is not intended to be exclusive and you should consider any other factors or evidence that bear on likelihood of confusion.

In considering these factors, your general knowledge, and any other evidence, you should not treat any single factor as dispositive; nor should you treat this as a simple mathematical exercise where the party with most of the above factors in its favor wins.  In other words, while you should consider all the above factors, some factors may be more important than others in the context of this case.  Thus, you should balance all the above factors and any other relevant factors or evidence to determine whether, in light of all the circumstances of this case, consumers are likely to be confused.

**8.0      UNFAIR COMPETITION**

The parties agree that the same standard governs infringement of an unregistered trade dress as governs the claim for unfair competition under the same federal statute.  The parties further agree that the same standards govern the claims for unfair competition in violation of state law.  Therefore, if you find for AHG on its trade dress infringement claim, you should also find for AHG on its unfair competition claims.  Similarly, if you find for Broetje on AHG's trade dress infringement claim, you should also find for Broetje on AHG's unfair competition claims.

**9.0    INTENTIONAL INTERFERENCE WITH PROSPECTIVE ECONOMIC RELATIONS**

**9.1    ELEMENTS OF CLAIM**

AHG claims that the Broetje Parties intentionally interfered with an economic relationship between AHG and third parties that probably would have resulted in an economic benefit to AHG.  To establish this claim, AHG must prove all of the following:

1.      That AHG and the third party were in an economic relationship that probably would have resulted in an economic benefit AHG;

2.      That the Broetje Parties knew of the relationship;

3.      That the Broetje Parties engaged in wrongful conduct through trade dress infringement or patent infringement;

4.      That by engaging in this conduct, the Broetje Parties intended to disrupt the relationship;

5.      That the relationship was disrupted;

6.      That AHG was harmed; and

7.      That the Broetje Parties' wrongful conduct was a substantial factor in causing AHG's harm.

60

## 10.0    PATENT DAMAGES

### 10.1    PATENT DAMAGES GENERALLY

I previously instructed you as to the law governing patent infringement and invalidity.  If you find that the Broetje Parties infringed one or more of claims 1, 2, or 6 of the '339 patent, or claims 1 or 2 of the '216 patent, by making, using, selling, or offering for sale any of their Accused Products, you must determine the amount of money damages to be awarded to AHG for the patent infringement.  The amount of damages must be adequate to compensate AHG for the infringement.  If you do not find patent infringement by the Broetje Parties' accused products, you will not consider patent damages at all.

AHG is entitled to damages that it has proven with "reasonable certainty."  On the one hand, reasonable certainty does not require proof of damages with mathematical precision.  Mere difficulty in ascertaining damages is not fatal to the patent owner.  On the other hand, the patent owner is not entitled to speculative damages; that is, you should not award any amount for loss, which, although possible, is remote or left to conjecture or guess.  You may base your evaluation of "reasonable certainty" on any evidence, including expert or opinion evidence.

AHG has the burden of proving each element of its damages by a preponderance of the evidence.  In other words, you should award only the amount of lost profits that AHG establishes that it more likely than not would have received in profit but for Broetje's infringement of AHG's patents.  The damages award should be based on sound economic proof of the nature of the market.

It is not relevant to the question of damages whether the Broetje Parties benefitted from, realized profits from, or even lost money as a result of the acts of infringement.  The only issue

is the amount necessary to adequately compensate AHG for the Broetje Parties' patent infringement.  Adequate compensation should return AHG to the position it would have been in had there been no patent infringement.

The fact that I am instructing you as to the proper measure of damages should not be construed as intimating any view of the Court as to which party is entitled to prevail in this case. Instructions as to the measure of damages are given for your guidance in the event you find the evidence in favor of AHG.

## 10.2    DATE PATENT DAMAGES MAY BEGIN AND END

In this case, for any infringement of the '216 patent that you find, you should begin calculating damages as of the date AHG first notified the Broetje Parties of its claim for patent infringement of the '216 patent.  The parties do not agree on that date, and it is up to you to determine what that date is.  AHG must prove that it is more likely than not that the Broetje Parties actually were notified of the claim for patent infringement of the '216 patent as of the date alleged by AHG.  AHG can give notice of the '216 patent by notifying the Broetje Parties with a specific claim that the Accused Products infringed the '216 patent.  Such notice starts from the date the Broetje Parties received the notice.  If you find that AHG, before filing this lawsuit, did not notify the Broetje Parties with a specific charge that the Accused Products infringed the '216 patent, then AHG can only recover damages for infringement of the '216 patent that occurred after it sued the Broetje Parties on May 12, 2009.

For any infringement of the '339 patent that you find, you should begin calculating damages as of the date you find that the Broetje Parties began making, using, selling, or offering for sale any of their Accused Products that infringed any claim of the '339 patent.

The date that patent damages end in this case is the date the '339 patent and the '216 patent expired, which is December 7, 2009.

### 10.3    METHODS FOR COMPUTING PATENT DAMAGES

There are two common methods for computing damages in a patent infringement case. One is called "lost profits" damages and the other is called "reasonable royalty" damages.  In this case, AHG is seeking only lost profits in connection with its patent infringement claims. Lost profits damages compensate the patent owner for the additional profits it would have made if the accused infringer had not infringed.  You may hear this referred to as the "but for" test.

**10.4    ENTIRE MARKET VALUE RULE**

The entire market value rule allows for the recovery of damages based on the value of an entire product containing several features, even though only one feature is patented, when the patented feature constitutes the basis for consumer demand for the product.  In other words, a plaintiff can receive damages for lost sales of non-patented components where the plaintiff proves that the patented feature drove customer demand for the non-patented components. Further, the plaintiff must prove that the infringing and non-infringing components are sold together so that they constitute a functional unit or are parts of a complete machine or single assembly of parts.  Lastly, the plaintiff must prove that the individual infringing and noninfringing components are analogous to a single functioning unit.  So, if you find that AHG has proven by a preponderance of the evidence that customers demanded Broetje's cassettes because of the patented features, you may award damages based on the value of the entire cassette.  However, if you find that customers' demand for Broetje's cassettes is based on something other than the patented feature, you should award damages based on the value of the patented features and not the value of the entire cassette.

65

### 10.5  PATENT LOST PROFITS – BUT-FOR TEST

AHG is seeking its lost profits as its patent damages.

AHG must prove the amount of its lost profits.  To recover lost profits for some or all of the infringing sales, AHG must show by a preponderance of evidence that, but for the infringement, AHG would have made profits.  The lost profits may be profits that would have resulted from AHG's sales or a portion of them that the Broetje Parties made of the accused product.  Thus, part of your job is to determine what the customers who purchased the accused product from the Broetje Parties would have done if the alleged infringement had not occurred.  The profits I have been referring to are the profits allegedly lost by AHG, not the profits, if any, made by the Broetje Parties.

**10.6   PATENT LOST PROFITS FROM LOST SALES (THE PANDUIT FACTORS)**

AHG has proven its lost profits if you find that AHG has proven each of the following factors by a preponderance of the evidence:

1.      There was demand for the patented product;

2.      There was an absence of acceptable non-infringing substitutes;

3.      That AHG had the manufacturing and marketing ability to make all or a part of the infringing sales actually made by the Broetje Parties; and

4.      The amount of profit AHG would have made if it were not for the Broetje Parties' infringement.

I will now explain each of these factors.

67

### 10.7    LOST PROFITS – DEMAND

The first Panduit factor asks whether there was demand for the patented product in the relevant market.  AHG can prove demand for the patented product by showing significant sales of AHG's own patented product.  AHG also can prove demand for the patented product by showing significant sales of the Broetje Parties' products that are covered by the patent in suit. To use sales of the Broetje Parties' products as proof of this demand, however, AHG's and the Broetje Parties' products must be sufficiently similar to compete against each other in the same market or market segment.  You also should not consider sales of products that are mainly due to advertising and marketing, or due to unpatented features of the products as evidence of demand for the patented product.

## 10.8    LOST PROFITS – ACCEPTABLE NON-INFRINGING SUBSTITUTES

The second factor asks whether there were non-infringing, acceptable substitutes for the patented products in the marketplace.  If the realities of the marketplace are that competitors other than AHG would likely have captured some or all of the sales made by the Broetje Parties, even despite a difference in the products, then AHG is not entitled to lost profits on those sales.

To be an acceptable substitute, the products must have had one or more of the advantages of the patented invention that were important to the actual buyers of the infringing products (not necessarily to the public in general).  The acceptable substitutes also must not infringe the patent because they were licensed under the patent or they did not include all the features required by the patent.  The acceptable substitutes, in addition, must have been available during the damages period.  An acceptable non-infringing substitute is available if, during the damages period, a competitor or the Broetje Parties had all the necessary equipment, materials, know-how, and experience to design and manufacture the substitute and sell such substitute instead of its infringing products at the time the sales for the infringing products were made.  If you determine that some of the Broetje Parties' customers would just as likely have purchased a non-infringing acceptable product, then AHG has not shown it lost those sales but-for Broetje's sales.

Even if you find that AHG's and the Broetje Parties' products were the only ones with the advantages of the patented invention, it still remains AHG's burden to prove that it in fact would have made the Broetje Parties' infringing sales.

69

## 10.9    LOST PROFITS – CAPACITY

The third factor asks whether AHG had the manufacturing and marketing ability to actually make the sales it allegedly lost due to the Broetje Parties' infringement.  AHG must prove that it could have supplied the additional patented products needed to make the sales AHG said it lost, or that someone working with AHG could have supplied the additional patented products.  AHG also must prove that it had the ability to market and sell those additional patented products.

### 10.10   COLLATERAL SALES – CONVOYED OR DERIVATIVE SALES

In this case, AHG contends that the patented product is ordinarily sold along with other products, namely AHG's loading stations, distribution racks, and other parts.  These other products are called "collateral products," and the sales of these types of collateral products are usually referred to as "convoyed sales." Another type of collateral products is spare or replacement parts.  The sales of these types of collateral products are usually referred to as "derivative sales."  It is part of your job to determine if AHG has proven that it is entitled to damages for the lost sales of any collateral products.

To recover lost profits for lost sales of any collateral products, AHG must prove two things.  First, AHG must prove that it is more likely than not that it would have sold the collateral products but-for the infringement.  Second, the collateral products and the patented product must be so closely related that they effectively act or are used together for a common purpose. Damages for lost collateral sales, if any, are calculated in the same way as for calculating lost profits on the patented product.

### 10.11   LOST PROFITS – DOUBTS RESOLVED AGAINST INFRINGER

Any doubts that you may have on the issue of damages due to the Broetje Parties' failure to keep proper records should be decided in favor of AHG.

### 10.12   PATENT DAMAGES INTEREST

Neither AHG's nor Broetje's calculations include interest.  Therefore, in arriving at your damages calculation, you should not consider interest in any way because it is the function of the Court to award interest.

**11.0   NON-PATENT DAMAGES**

**11.1   DAMAGES FOR TRADE DRESS INFRINGEMENT AND UNFAIR COMPETITION--GENERALLY**

If you find based on the instructions you have been given that Broetje infringed AHG's trade dress and/or unfairly competed with AHG, you may award AHG damages in an amount you determine to be fair and equitable, consisting of the sum of (1) AHG's actual damages attributable to Broetje's infringing AHG's trade dress and/or unfair competition; and (2) Broetje's profits attributable to infringing AHG's trade dress and/or unfairly competing with AHG.

### 11.2   DAMAGES FOR TRADE DRESS INFRINGEMENT AND UNFAIR COMPETITION-ACTUAL DAMAGES

If you find for AHG on its trade dress infringement claim, you must determine AHG's actual damages.

AHG has the burden of proving actual damages by a preponderance of the evidence. Damages means the amount of money which will reasonably and fairly compensate the plaintiff for any injury you find was caused by the defendant's infringement of the plaintiff's trade dress.

You should consider the following: (1) The injury to or loss of the plaintiffs reputation; (2) The injury to or loss of the plaintiffs goodwill, including injury to the plaintiffs general business reputation; (3) The lost profits that the plaintiff would have earned but for the defendant's infringement; and (4) The expense of preventing customers from being deceived.

When considering prospective costs, you must not overcompensate.  Accordingly, your award of such future costs should not exceed the actual damage to the value of the plaintiffs' mark at the time of the infringement by the defendant.

### 11.3    DAMAGES FOR TRADE DRESS INFRINGEMENT AND UNFAIR COMPETITION-BROETJE'S PROFITS

In addition to actual damages, the plaintiff is entitled to any profits earned by the defendant that are attributable to the infringement, which the plaintiff proves by a preponderance of the evidence.  You may not, however, include in any award of profits any amount that you took into account in determining actual damages.

Profit is determined by deducting all expenses from gross revenue.  Gross revenue is all of the Broetje Parties' revenues resulting from using the use of AHG's trade dress.

Expenses are all operating, overhead and production costs incurred in producing the gross revenue.  The defendant has the burden of proving the expenses and the portion of the profit attributable to factors other than use of the infringed trade dress by a preponderance of the evidence.

Unless you find that a portion of the profit from the use of AHG's trade dress is attributable to factors other than use of the trade dress, you shall find that the total profit is attributable to the infringement.

**11.4    DAMAGES FOR TRADE DRESS INFRINGEMENT: INTENTIONAL INFRINGEMENT**

If you find that Broetje infringed AHG's trade dress, you must also determine whether

Broetje used the trade dress intentionally, knowing it was an infringement.

### 11.5   DAMAGES FOR TRADE DRESS INFRINGEMENT AND STATE UNFAIR COMPETITION: PUNITIVE DAMAGES

If you decide that the Broetje Parties' conduct caused AHG harm, you must decide whether that conduct justifies an award of punitive damages.  The purposes of punitive damages are to punish a wrongdoer for the conduct that harmed the plaintiff and to discourage similar conduct in the future.

You may award punitive damages against the Broetje Parties only if AHG proves that the Broetje Parties engaged in unfair competition, and that the Broetje Parties did so with malice, oppression, or fraud.  To do this, AHG must prove one of the following by clear and convincing evidence:

1.      That the conduct constituting malice, oppression, or fraud was committed by one or more officers, directors, or managing agents of the Broetje Parties, who acted on behalf of the Broetje Parties; or

2.      That the conduct constituting malice, oppression, or fraud was authorized by one or more officers, directors, or managing agents of the Broetje Parties; or

3.      That one or more officers, directors, or managing agents of the Broetje Parties knew of the conduct constituting malice, oppression, or fraud and adopted or approved that conduct after it occurred.

"Malice" means that the Broetje Parties acted with intent to cause injury or that the Broetje Parties' conduct was despicable and was done with a willful and knowing disregard for AHG's rights.  A person acts with knowing disregard when he or she is aware of the probable harmful consequences of his or her conduct and deliberately fails to avoid those consequences. "Oppression" means that the Broetje Parties' conduct was despicable and subjected AHG to cruel and unjust hardship in knowing disregard of AHG's rights.  "Despicable conduct" is conduct that is so vile, base, or contemptible that it would be looked down on and despised by

78

reasonable people.  "Fraud" means that the Broetje Parties intentionally misrepresented or concealed a material fact and did so intending to harm AHG.

An employee is a "managing agent" if he or she exercises substantial independent authority and judgment in his or her corporate decision-making such that his or her decisions ultimately determine corporate policy.

There is no fixed formula for determining the amount of punitive damages, and you are not required to award any punitive damages.  If you decide to award punitive damages, you should consider all of the following factors in determining the amount:

(a)     How reprehensible was the Broetje Parties' conduct? In deciding how reprehensible the Broetje Parties' conduct was, you may consider, among other factors:

1.     Whether the Broetje Parties' conduct involved a pattern or practice; and

2.     Whether the Broetje Parties acted with trickery or deceit.

(b)     Is there a reasonable relationship between the amount of punitive damages and AHG's harm?

(c)     In view of the Broetje Parties' financial condition, what amount is necessary to punish it and discourage future wrongful conduct? You may not increase the punitive award above an amount that is otherwise appropriate merely because the Broetje Parties have substantial financial resources.  Any award you impose may not exceed the Broetje Parties' ability to pay.

Punitive damages may not be used to punish the Broetje Parties for the impact of their alleged misconduct on persons other than AHG.

79

**11.6    STATUTE OF LIMITATIONS: TRADE DRESS INFRINGEMENT**

The Broetje Parties contend that AHG's lawsuit was not filed within the time set by law. I instruct you that you can only find the Broetje Parties liable for trade dress infringement that AHG proves occurred after May 12, 2006.  You cannot find the Broetje Parties liable for any trade dress infringement that may have occurred before May 12, 2006.

**11.7    STATUTE OF LIMITATIONS: TRADE DRESS INFRINGEMENT —
DELAYED DISCOVERY**

If the Broetje Parties prove that AHG's claimed harm occurred before May 12, 2006,

AHG's lawsuit was still filed on time if AHG proves that before that date, AHG did not

discover, and did not know of facts that would have caused a reasonable person to suspect, that it

had suffered harm in the United States that was caused by someone's wrongful conduct.

**11.8    STATUTE OF LIMITATIONS: FEDERAL LAW UNFAIR
COMPETITION**

The Broetje Parties contend that AHG's lawsuit was not filed within the time set by law.

I instruct you that you can only find the Broetje Parties liable for unfair competition under

federal law for unfair competition that AHG proves occurred after May 12, 2006.  You cannot

find the Broetje Parties liable for any federal unfair competition that may have occurred before

May 12, 2006.

**11.9    STATUTE OF LIMITATIONS: FEDERAL LAW UNFAIR COMPETITION — DELAYED DISCOVERY**

If the Broetje Parties prove that AHG's claimed harm occurred before May 12, 2006, AHG's lawsuit was still filed on time if AHG proves that, before that date, AHG did not discover, and did not know of facts that would have caused a reasonable person to suspect, that it had suffered harm in the United States that was caused by someone's wrongful conduct.

### 11.10   STATUTE OF LIMITATIONS: STATE LAW UNFAIR COMPETITION (STATE LAW)

The Broetje Parties contend that AHG's lawsuit was not filed within the time set by law. I instruct you that you can only find the Broetje Parties liable for trade dress infringement that AHG proves occurred after May 12, 2007.  You cannot find the Broetje Parties liable for any trade dress infringement that may have occurred before May 12, 2007.

**11.11   STATUTE OF LIMITATIONS: STATE LAW UNFAIR COMPETITION —
DELAYED DISCOVERY**

If the Broetje Parties prove that AHG's claimed harm occurred before May 12, 2007,

AHG's lawsuit was still filed on time if AHG proves that before that date, AHG did not discover,

and did not know of facts that would have caused a reasonable person to suspect, that it had

suffered harm in the United States that was caused by someone's wrongful conduct.

### 11.12   DAMAGES FOR INTENTIONAL INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE: GENERALLY

If you decide that AHG has proved its claim against the Broetje Parties, you also must decide how much money will reasonably compensate AHG for the harm.  This compensation is called "damages."

The amount of damages must include an award for each item of harm that was caused by the Broetje Parties' wrongful conduct, even if the particular harm could not have been anticipated.

AHG does not have to prove the exact amount of damages that will provide reasonable compensation for the harm.  However, you must not speculate or guess in awarding damages.

The following are the specific items of damages claimed by AHG are:

1.      Lost profits; and

2.      Punitive damages.

86

**11.13   DAMAGES FOR INTENTIONAL INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE-COMPENSATORY DAMAGES**

As compensatory damages, AHG claims lost profits that AHG allegedly would have earned but-for Broetje's intentional interference with AHG's prospective economic advantage with third party customers.  To recover damages for lost profits, AHG must prove it is reasonably certain that it would have earned profits but-for Broetje's conduct.

To decide the amount of damages for lost profits, you must determine the gross amount AHG would have received but-for Broetje's conduct and then subtract from that amount the expenses AHG would have had if Broetje's conduct had not occurred.

The amount of lost profits need not be calculated with mathematical precision, but there must be a reasonable basis for computing the loss.

### 11.14   DAMAGES FOR INTENTIONAL INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE: PUNITIVE DAMAGES

If you decide that the Broetje Parties' conduct caused AHG harm, you must decide whether that conduct justifies an award of punitive damages.  The purposes of punitive damages are to punish a wrongdoer for the conduct that harmed the plaintiff and to discourage similar conduct in the future.

You may award punitive damages against the Broetje Parties only if AHG proves that the Broetje Parties engaged in intentional interference with prospective economic advantage, and that the Broetje Parties did so with malice, oppression, or fraud.  To do this, AHG must prove one of the following by clear and convincing evidence:

1.      That the conduct constituting malice, oppression, or fraud was committed by one or more officers, directors, or managing agents of the Broetje Parties, who acted on behalf of the Broetje Parties; or

2.      That the conduct constituting malice oppression, or fraud was authorized by one or more officers, directors, or managing agents of the Broetje Parties; or

3.      That one or more officers, directors, or managing agents of the Broetje Parties knew

of the conduct constituting malice oppression, or fraud and adopted or approved that conduct after it occurred.

"Malice" means that the Broetje Parties acted with intent to cause injury or that the Broetje Parties' conduct was despicable and was done with a willful and knowing disregard for AHG's rights.  A person acts with knowing disregard when he or she is aware of the probable harmful consequences of his or her conduct and deliberately fails to avoid those consequences.

"Oppression" means that the Broetje Parties' conduct was despicable and subjected AHG

88

to cruel and unjust hardship in knowing disregard of AHG's rights.  "Despicable conduct" is conduct that is so vile, base, or contemptible that it would be looked down on and despised by reasonable people.  "Fraud" means that the Broetje Parties intentionally misrepresented or concealed a material fact and did so intending to harm AHG.

An employee is a "managing agent" if he or she exercises substantial independent authority and judgment in his or her corporate decision-making such that his or her decisions ultimately determine corporate policy.

There is no fixed formula for determining the amount of punitive damages, and you are not required to award any punitive damages.  If you decide to award punitive damages, you should consider all of the following factors in determining the amount:

(a)    How reprehensible was the Broetje Parties' conduct? In deciding how reprehensible the Broetje Parties' conduct was, you may consider, among other factors:

1.  Whether the Broetje Parties' conduct involved a pattern or practice; and

2.  Whether the Broetje Parties acted with trickery or deceit.

(b)    Is there a reasonable relationship between the amount of punitive damages and AHG's harm?

(c)    In view of the Broetje Parties' financial condition, what amount is necessary to punish it and discourage future wrongful conduct? You may not increase the punitive award above an amount that is otherwise appropriate merely because the Broetje Parties have substantial financial resources.  Any award you impose may not exceed the Broetje Parties' ability to pay.

89

Punitive damages may not be used to punish the Broetje Parties for the impact of their alleged misconduct on persons other than AHG.

### 11.15   A STATUTE OF LIMITATIONS: INTENTIONAL INTERFERENCE
### WITH PROSPECTIVE ECONOMIC ADVANTAGE

The Broetje Parties contend that AHG's lawsuit was not filed within the time set by law.

To succeed on this defense, the Broetje Parties must prove that each of AHG's claimed

harms occurred before May 12, 2007.

**11.16   STATUTE OF LIMITATIONS: INTENTIONAL INTERFERENCE WITH
PROSPECTIVE ECONOMIC ADVANTAGE — DELAYED DISCOVERY**

If the Broetje Parties prove that AHG's claimed harm occurred before May 12, 2007,

AHG's lawsuit was still filed on time if AHG proves that before that date, AHG did not

discover, and did not know of facts that would have caused a reasonable person to suspect, that it

had suffered harm in the United States that was caused by someone's wrongful conduct.

### 11.17   NO DUPLICATIVE DAMAGES — NON-PATENT DAMAGES

AHG seeks damages from the Broetje Parties under more than one legal theory. However, each item of damages, except punitive damages, may be awarded only once, regardless of the number of legal theories alleged.

You will be asked to decide whether the Broetje Parties are liable to AHG under the following legal theories:

1.      Trade dress infringement;

2.      Federal law unfair competition;

3.      State law unfair competition;

4.      Intentional interference with prospective business advantage.

The following items of compensatory damages are recoverable only once whether under one or more of the foregoing:

1.      AHG's damages;

2.      The Broetje Parties' profits resulting from the infringement.

In other words, the total compensatory damages award for trade dress infringement, federal unfair competition, State law unfair competition, and intentional interference with prospective business advantage, individually or in any combination, cannot exceed the total of all of AHG's damages plus all of the Broetje Parties' profits.

Punitive damages, if you determine that AHG is entitled to them, should be awarded separately from the compensatory damages.

93

**12.0    CLOSING STATEMENT – DAMAGES**

The fact that I have instructed you regarding damages should not be construed as suggesting which party is to prevail in this case.  Instructions regarding damages are given for your guidance in the event that the evidence leads you to find in favor of AHG.

**13.0    FOREIGN LAW**

You have heard evidence about legal proceedings involving some of the parties to this lawsuit that have occurred and may be ongoing in France and Germany.  Be mindful, however, that the laws in France and Germany are different than the laws in the United States.  For example, the procedures for determining patent infringement and patent invalidity are different in France and Germany than they are in the United States.  Additionally, the patents at issue in France and Germany are not the same patents at issue in this case.

The evidence of foreign legal proceedings was introduced to provide you background as to the parties' relationship.  You might also find this evidence to be relevant to Broetje's knowledge of the patents-in-suit and intent, which you may find to be relevant to AHG's claims for induced infringement, contributory infringement, and willful infringement.

Similarly, be mindful that any foreign decision with respect to trade dress infringement or the contractual relationship between the parties was also not based on United States law and AHG is not asserting a breach of contract claim here.  Although the foreign decisions may provide you with helpful background information, your duty with respect to all of the issues before you is to apply the law as I have instructed you to the facts as you find them based solely on the evidence presented here in Court.

**14.0    DELIBERATION AND VERDICT**

**14.1    INTRODUCTION**

That concludes the part of my instructions explaining the rules for considering some of the testimony and evidence.  Now let me finish up by explaining some things about your deliberations in the jury room, and your possible verdicts.

Once you start deliberating, do not talk to the jury officer, or to me, or to anyone else except each other about the case.  If you have any questions or messages, you must write them down on a piece of paper, sign them, and then give them to the jury officer.  The officer will give them to me, and I will respond as soon as I can.  I may have to talk to the lawyers about what you have asked, so it may take some time to get back to you.  Any questions or messages normally should be sent to me through your foreperson, who by custom of this Court is Juror No.1.

One more thing about messages.  Do not ever write down or tell anyone how you stand on your votes.  For example, do not write down or tell anyone that you are split 4-4, or 6-2, or whatever your vote happens to be.  That should stay secret until you are finished.

### 14.2    UNANIMOUS VERDICT

Your verdict must represent the considered judgment of each juror.  In order for you as a jury to return a verdict, it is necessary that each juror agree to the verdict.  Your verdict must be unanimous.

It is your duty, as jurors, to consult with one another and to deliberate with a view towards reaching an agreement, if you can do so without violence to your individual judgment. Each of you must decide the case for yourself, but do so only after an impartial consideration of the evidence with your fellow jurors.  In the course of your deliberations, do not hesitate to reexamine your own views and change your opinion, if you become convinced it is erroneous. But do not surrender your honest conviction as to the weight or effect of evidence solely because of the opinion of your fellow jurors, or for the purpose of returning a verdict.  Remember at all times that you are not partisans.  You are judges - judges of the facts.  Your sole interest is to seek the truth from the evidence in the case.

A form of verdict has been prepared for you, and you have been provided a copy.  I will read it to you shortly.  You will take this form to the jury room and when you have reached unanimous agreement as to your verdict, you will have your foreperson fill in, date and sign the form.  You will then return to the courtroom and your foreperson will give your verdict to my deputy.

It is proper to add the caution that nothing said in these instructions and nothing in the form of verdict is meant to suggest or convey in any way or manner any intimation as to what verdict I think you should find.  What the verdict shall be is the sole and exclusive duty and responsibility of the jury.

**14.3    DUTY TO DELIBERATE**

Now that all the evidence is in and the arguments are completed, you are free to talk about the case in the jury room.  In fact, it is your duty to talk with each other about the evidence, and to make every reasonable effort you can to reach unanimous agreement.  Talk with each other, listen carefully and respectfully to each other's views, and keep an open mind as you listen to what your fellow jurors have to say.  Try your best to work out your differences.  Do not hesitate to change your mind if you are convinced that other jurors are right and that your original position was wrong.  But do not ever change your mind just because other jurors see things differently, or just to get the case over with.  In the end, your vote must be exactly that - your own vote.  It is important for you to reach unanimous agreement, but only if you can do so honestly and in good conscience.

No one will be allowed to hear your discussions in the jury room, and no record will be made of what you say.  So you should all feel free to speak your minds.

Listen carefully to what the other jurors have to say, and then decide for yourself.

98

**14.4   DO NOT CONSIDER WHAT WILL HAPPEN AFTER TRIAL**

Members of the jury, in this case you may have heard or noticed inferences as to what may happen after this trial.  You are to disregard any inferences as to what may happen after you have rendered your verdict.

**14.5    COURT HAS NO OPINION**

Let me finish up by repeating something that I said to you earlier.  Nothing that I have said or done during this trial was meant to influence your decision in any way.

As I mentioned earlier, the lawyers' statements and arguments are not evidence.  Their questions and objections are not evidence.  Any of my comments and questions are not evidence.  The notes taken by any juror are not evidence.  You must decide the case yourselves based only on the evidence presented.

My legal rulings are not evidence, although you are required by your oath to follow my instructions and apply them to the evidence.