# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

ATELIERS DE LA HAUTE-GARONNE : 
(French Corporation) and F2C2 SYSTEMS : 
S.A.S. (French Corporation), :
                :
          Plaintiffs, :
                :
       v. : Civil Action No. 09-598-LPS
                :
BROETJE AUTOMATION-USA INC. :
(Delaware Corporation) and BRÖTJE- :
AUTOMATION GMBH (German :
Corporation), :
                :
          Defendants. :

---

Melanie K. Sharp, James L. Higgins, and Monte T. Squire, YOUNG CONAWAY STARGATT & TAYLOR, LLP, Wilmington, Delaware.

Scott G. Lindvall, Jeffrey H. Horowitz, and Sarah Welbourne Saunders, KAYE SCHOLER LLP, New York, New York.

Paul I. Margulies, KAYE SCHOLER LLP, Washington, DC.

Michelle Marek, KAYE SCHOLER LLP, Chicago, Illinois.

      Attorneys for Plaintiffs.


Todd C. Schiltz and Joseph C. Schoell, DRINKER BIDDLE & REATH LLP, Wilmington, Delaware.

Patrick J. Kelleher, Darren S. Cahr, and Carrie A. Beyer, DRINKER BIDDLE & REATH LLP, Chicago, Illinois.

      Attorneys for Defendants.

---

## **MEMORANDUM OPINION**

March 30, 2015
Wilmington, Delaware.



**STARK, U.S. District Judge:**

Pending before the Court is Ateliers de la Haute-Garonne and F2C2 Systems S.A.S.'s (collectively, "AHG's") Motion for Attorneys' Fees (D.I. 426), Broetje Automation-USA Inc. and Brotje Automation GMBH's (collectively, "Broetje's") Combined Renewed Motion for Judgment as a Matter of Law ("JMOL"), or, in the alternative, for a New Trial, or to Alter and Amend the Judgment (D.I. 434), and AHG's Motion to Alter or Amend the Judgment (D.I. 441).

## I. BACKGROUND

AHG filed this patent infringement action on May 12, 2009, alleging that Broetje infringes United States Patent Nos. 5,011,339 ("the '339 patent") and 5,143,216 ("the '216 patent"). (D.I. 2; *see also* D.I. 48) With respect to the '339 patent, AHG asserted infringement of claims 1, 2, and 6, and with respect to the '216 patent, infringement of claims 1 and 2. AHG also accused Broetje of trade dress infringement, unfair competition, and violation of California law against intentional interference with prospective economic advantage ("IIPEA"). (D.I. 48 at ¶¶ 53-96)

The Court presided over a five-day jury trial in April 2014. (*See* D.I. 416) On the patent issues, the jury found that Broetje directly, contributorily, and willfully infringed both the '339 and '216 patents and that it induced infringement as well. The jury determined that the asserted claims in the '339 and '216 patents were valid. The jury further found that Broetje intentionally infringed AHG's trade dress, which – by the parties' stipulation – also made Broetje liable for unfair competition. The jury additionally found that Broetje intentionally interfered with AHG's prospective economic advantage in violation of California law. The jury awarded AHG $2,099,943 in compensatory damages for patent infringement, $6,000,000 in compensatory

1

damages for trade dress infringement, unfair competition, and IIEPA, and an additional

$6,000,000 of punitive damages for intentional trade dress infringement, intentional unfair

competition, and IIEPA, for a total award of $14,099,943. (D.I. 416)

The Court entered judgment on the verdict on April 28, 2014. (D.I. 425) The parties

filed post-trial motions and completed briefing on July 11, 2014. (*See* D.I. 470) The Court heard

argument on the motions on September 15, 2014. (*See* D.I. 482)

At the conclusion of the motions hearing, the Court advised the parties it was prepared to

share its inclinations on the issues in dispute, but would solicit the parties' views on whether it

should do so. (*Id.* at 83-86) As the Court explained, what was motivating its proposal to share

its inclinations was its sense that this longstanding case (which has already been to the Federal

Circuit and back once before) was either going to be litigated for a long time to come or the

parties were going to work out a resolution acceptable to both sides. (*See id.*) When the parties

were unable to agree even on whether the Court should share its inclinations, the Court decided it

would do so nonetheless. (D.I. 484) In an October 22, 2014 letter to counsel, "in hopes that

there may yet be an opportunity for the parties to resolve this case without further litigation, and

that perhaps I may spare the parties additional effort and expense, I have decided to tell you how

I am likely to decide the motions." (*Id.* at 1) Specifically, the Court stated that, among other

things, it was inclined to deny AHG's motion for attorney fees, deny Broetje's motion for a new

trial, and grant in part and deny in part Broetje's motion for judgment as a matter of law. (*Id.* at

2)[1]

_____

[1]At the same time, the Court referred the case to Magistrate Judge Burke, who thereafter
engaged in extensive efforts with the parties to explore the possibility of settlement. Judge Burke
held a lengthy mediation session and the parties repeatedly asked for additional time to see if

## II.    LEGAL STANDARDS

### A.    Motion for Judgment as a Matter of Law

Judgment as a matter of law is appropriate if "the court finds that a reasonable jury would

not have a legally sufficient evidentiary basis to find for [a] party" on an issue. Fed. R. Civ. P.

50(a)(1). "Entry of judgment as a matter of law is a sparingly invoked remedy," one "granted

only if, viewing the evidence in the light most favorable to the nonmovant and giving it the

advantage of every fair and reasonable inference, there is insufficient evidence from which a jury

reasonably could find liability." *Marra v. Phila. Hous. Auth.*, 497 F.3d 286, 300 (3d Cir. 2007)

(internal quotation marks omitted).

To prevail on a renewed motion for judgment as a matter of law following a jury trial, the

moving party "must show that the jury's findings, presumed or express, are not supported by

substantial evidence or, if they were, that the legal conclusions implied [by] the jury's verdict

cannot in law be supported by those findings." *Pannu v. Iolab Corp.*, 155 F.3d 1344, 1348 (Fed.

Cir. 1998) (internal quotation marks omitted). "'Substantial' evidence is such relevant evidence

from the record taken as a whole as might be accepted by a reasonable mind as adequate to

support the finding under review." *Perkin–Elmer Corp. v. Computervision Corp.*, 732 F.2d 888,

893 (Fed. Cir. 1984).

In assessing the sufficiency of the evidence, the Court must give the non-moving party,

"as [the] verdict winner, the benefit of all logical inferences that could be drawn from the

---

they could settle their differences. (*See* D.I. 488, 490, 492) On February 16, 2015, the parties
advised the Court that "[r]egrettably, despite Magistrate Judge Burke's much appreciated
assistance, it appears that the matters at issue in this case cannot be resolved in mediation." (D.I.
492) The Court expresses its gratitude to Judge Burke for his efforts.

evidence presented, resolve all conflicts in the evidence in his favor, and in general, view the record in the light most favorable to him." *Williamson v. Consol. Rail Corp.*, 926 F.2d 1344, 1348 (3d Cir. 1991); *see also Perkin–Elmer Corp.*, 732 F.2d at 893. The Court may not assess the credibility of witnesses nor "substitute its choice for that of the jury between conflicting elements of the evidence." *Perkin–Elmer Corp.*, 732 F.2d at 893. Rather, the Court must determine whether the evidence reasonably supports the jury's verdict. *See Dawn Equip. Co. v. Ky. Farms Inc.*, 140 F.3d 1009, 1014 (Fed. Cir. 1998); *Gomez v. Allegheny Health Servs. Inc.*, 71 F.3d 1079, 1083 (3d Cir. 1995) (describing standard as "whether there is evidence upon which a reasonable jury could properly have found its verdict"); 9B Wright & Miller, Federal Practice & Procedure § 2524 (3d ed. 2008) ("The question is not whether there is literally no evidence supporting the party against whom the motion is directed but whether there is evidence upon which the jury properly could find a verdict for that party.").

## B. Motion for a New Trial

Federal Rule of Civil Procedure 59(a) provides, in pertinent part:

> A new trial may be granted to all or any of the parties and on all or part of the issues in an action in which there has been a trial by jury, for any of the reasons for which new trials have heretofore been granted in actions at law in the courts of the United States.

New trials are commonly granted in the following situations: (1) where the jury's verdict is against the clear weight of the evidence, and a new trial must be granted to prevent a miscarriage of justice; (2) where newly-discovered evidence exists that would likely alter the outcome of the trial; (3) where improper conduct by an attorney or the court unfairly influenced the verdict; or (4) where the jury's verdict was facially inconsistent. *See Zarow-Smith v. N.J.*

4

*Transit Rail Operations*, 953 F. Supp. 581, 584 (D.N.J. 1997).

The decision to grant or deny a new trial is committed to the sound discretion of the district court. *See Allied Chem. Corp. v. Daiflon, Inc.*, 449 U.S. 33, 36 (1980); *Olefins Trading, Inc. v. Han Yang Chem. Corp.*, 9 F.3d 282, 289 (3d Cir. 1993) (reviewing district court's grant or denial of new trial motion under deferential "abuse of discretion" standard). However, where the ground for a new trial is that the jury's verdict was against the great weight of the evidence, the Court should proceed cautiously, because such a ruling would necessarily substitute the Court's judgment for that of the jury. *See Klein v. Hollings*, 992 F.2d 1285, 1290 (3d Cir. 1993). Although the standard for grant of a new trial is less rigorous than the standard for grant of judgment as a matter of law – in that the Court need not view the evidence in the light most favorable to the verdict winner – a new trial should only be granted where "a miscarriage of justice would result if the verdict were to stand," the verdict "cries out to be overturned," or where the verdict "shocks [the] conscience." *Williamson*, 926 F.2d at 1352-53.

## III. DISCUSSION

### A. Patent Infringement and Validity

The jury found that Broetje infringed AHG's '339 and '216 patents and that those patents were not invalid. Broetje moves for judgment as a matter of law that it does not infringe and that the patents-in-suit are invalid. Because substantial evidence supports the jury's findings on both infringement and invalidity, the Court will deny Broetje's motion.

Broetje's arguments for judgment as a matter of law of noninfringement of the '339 and '216 patents are unpersuasive. With respect to the '339 patent, AHG presented evidence, including expert opinion, that Broetje's accused product contains: (1) "at least one longitudinal

5

passageway" "opening into" (D.I. 430 (collectively, with D.I. 429 and 431-43, "Tr.") at 506-07); (2) "peripheral guiding" (Tr. 501-03); (3) axes in alignment when the product is used (Tr. 495, 503-05); and (4) "withdrawing" the stop member at the end of the tube (Tr. 510). AHG's expert, Dr. Kytomaa, further testified that Broetje's accused cassette includes a "groove arranged . . . to open into the hollow center" (Tr. 512) and that Broetje's tube "substantially equals" the area of the rivet head (Tr. 513-15). Based on this and other evidence of record, the jury could reasonably determine that Broetje's cassette infringed the '339 and '216 patents.

Broetje's arguments for judgment as a matter of law of invalidity of the patents-in-suit are also unavailing. The jury reasonably could have found the patents non-obvious, even in light of the Shinjo and Komaki references, based on at least the following evidence of record: (1) Broetje's expert, Mr. Lawrence, testified at trial in a manner contradicting his deposition testimony; (2) Mr. Lawrence failed to provide a reason for modifying Shinjo to rotate the fastening pieces ninety degrees; (3) Mr. Lawrence did not describe where each element of the asserted claims could be found in Shinjo; (4) Dr. Kytomaa rebutted Mr. Lawerence's opinions; and (5) AHG provided substantial evidence of secondary considerations of nonobviousness. (D.I. 459 at 24-26) From all of this, the jury reasonably could have found that Broetje failed to meet its burden to prove invalidity due to obviousness by clear and convincing evidence.

Broetje argues that, given the Court's broad claim construction, Offutt reads on the claims of the patents-in-suit, as the oval shape with grooves/passageways is created when the circular tube of Offutt is bent. (D.I. 435 at 24-25) AHG responds that Broetje did not present a witness who identified how each of the claim elements is disclosed in the prior art. (D.I. 459 at 27) Further, the testimony of inventor Mr. Bornes, on whom Broetje relies regarding bent tubes, was

6

not specific to the Offutt reference. (*Id.*) The jury reasonably could have determined that Broetje failed to prove by clear and convincing evidence that Offutt anticipates the claims.

Broetje further contends that, because the jury heard three different definitions of "peripheral guiding" from two inventors and AHG's expert, the claim term "peripheral guiding" is indefinite. (D.I. 435 at 25) The jury was not compelled to find this clear and convincing evidence that one of ordinary skill in the art would not know with reasonable certainty the scope of the claims. *See Nautilus, Inc. v. Biosig Instruments, Inc.*, 134 S. Ct. 2120 (2014). Based on the multiple witnesses with similar testimony (Tr. 501-03, 761-62, 986, 1022-23), a reasonable jury could find that the term "peripheral guiding" is definite. There is substantial evidence to support the jury's finding. (*See also* D.I. 415 at 48 (Jury Instr. 6.10) ("If the claims, read in light of the disclosure, reasonably apprise those skilled in the art of the proper scope of the invention, and if the language is as precise as the subject matter permits, then the claims are not indefinite."))

## B. Willful Patent Infringement

Broetje's motion for JMOL of no willful patent infringement will be granted. The Court agrees with Broetje that AHG failed to satisfy the objective prong for willful patent infringement because Broetje relied on reasonable defenses to infringement, including Broetje's proposed claim constructions and invalidity defenses. (D.I. 435 at 27) Accordingly, the Court need not reach the further issue of whether substantial evidence supports the jury's findings that AHG satisfied the subjective prong of the willfulness inquiry, which AHG contends it does (*see* D.I. 459 at 30) and Broetje contends it does not (*see* D.I. 435 at 28-31).

To prove willful infringement, a patent owner must demonstrate by clear and convincing

7

evidence that the infringer acted despite an "objectively high likelihood that its actions constituted infringement" (i.e., the objective prong) and that this "objectively-defined risk was . . . either known or so obvious that it should have been known to the accused infringer" (i.e., the subjective prong). *In re Seagate Tech., LLC*, 497 F.3d 1360, 1371 (Fed. Cir. 2007) (en banc). A court, rather than the jury, is best equipped to decide the objective prong. *See Bard Peripheral Vascular, Inc. v. W.L. Gore & Assoc., Inc.*, 682 F.3d 1003, 1006 (Fed. Cir. 2012). The objective prong is usually not satisfied when the defendant relies on reasonable defenses to a charge of infringement. *See Spine Solutions, Inc. v. Medtronic Sofamor Danek USA, Inc.*, 620 F.3d 1305, 1319 (Fed. Cir. 2010).

Here, Broetje relied on reasonable infringement defenses, such as Broetje's proposed claim construction and non-infringement and invalidity defenses. Therefore, the objective prong for willful patent infringement is not satisfied. *See id.* The Court will enter judgment as a matter of law of no willful infringement by Broetje.

## C. Trade Dress Infringement & Unfair Competition

The Court will deny Broetje's motion for JMOL of no trade dress infringement and no unfair competition.

To prove trade dress infringement, a plaintiff must show: "(1) the allegedly infringing design is non-functional; (2) the design is inherently distinctive or has acquired secondary meaning; and (3) consumers are likely to confuse the source of the plaintiff's product with that of the defendant's product." *McNeil Nutritionals, LLC v. Heartland Sweeteners, LLC*, 511 F.3d 350, 357 (3d Cir. 2007). Substantial evidence supports the jury's reasonable finding that AHG proved each of these elements.

In particular, the jury could have reasonably found that the overall look and feel of AHG's cassette was nonfunctional because Broetje was able to design a new cassette that did not have the same overall look and feel as Broetje's previous cassette. (*See, e.g.*, D.I. 459 at 5 (discussing evidence and showing photographs of AHG and Broetje cassettes)) In addition, the jury reasonably could have concluded that AHG's cassette design acquired a secondary meaning because AHG was the only supplier of cassettes since the mid-1990s, it advertised through trade shows, and the market was limited to four customers. (*See id.* at 8-9)[2] The jury also reasonably could have found a likelihood of confusion based on the following evidence: (1) Broetje sold AHG cassettes for over a decade, (2) Broetje and AHG advertised together, (3) customers expected to purchase AHG cassettes from Broetje, and (4) customers did not always specify what cassette they wanted in the system because it was a small part of a large system. (*See id.* at 12)

AHG and Broetje stipulated that the unfair competition claim rises and falls with the trade dress infringement claim. (D.I. 435 at 18-19) Because the jury's verdict finding Broetje infringed AHG's trade dress will stand, the Court must deny Broetje's motion for JMOL of no unfair competition as well.

## D. Willful Trade Dress Infringement and Punitive Damages

The Court will grant Broetje's motion for JMOL of no willful trade dress infringement.

The legal standards for willful trade dress infringement are at least as burdensome as that for willful trademark infringement. *See Clearline Techs. Ltd. v. Cooper B-Line, Inc.*, 948 F. Supp. 2d 691, 705 (S.D. Tex. 2013) (applying standard for willful trademark infringement to

---

[2]To assess secondary meaning, a court may look to factors such as length, manner, degree, and exclusivity of use of the trade dress. *See Ford Motor Co. v. Summit Motor Prods., Inc.*, 930 F.2d 277, 292 (3d Cir. 1991).

9

determine if defendants engaged in willful trade dress infringement). Willful trademark infringement requires "an intent to infringe or a deliberate disregard of a mark holder's rights." *Securacom Inc. v. Lidengood*, 166 F.3d 182, 187 (3d Cir. 1999), *superseded by statute on other grounds as stated in Banjo Buddies, Inc. v. Renosky*, 399 F.3d 168, 173-76 (3d Cir. 2005).

AHG proved at trial that it and Broetje were in a longstanding relationship and that AHG sent Broetje a letter requesting that it cease all acts of infringement or unfair competition. (D.I. 459 at 18) However, there was not substantial evidence produced at trial that Broetje had actual or constructive notice prior to suit that AHG's product was protected by trade dress. (*See, e.g.*, D.I. 469 at 8-9 (describing lack of evidence)) Additionally, there was evidence that Broetje informed its customers that it was the manufacturer of the accused Broetje rivet cassettes. (*See* D.I. 454 at 8 (citing evidence)) On the whole, the record does not contain substantial evidence that Broetje acted with an intent to infringe or deliberately disregard AHG's trade dress rights.

The jury awarded AHG $6,000,000 in punitive damages for willful trade dress infringement and unfair competition. Because substantial evidence does not support a finding of willful trade dress infringement or unfair competition, there is no basis for punitive damages to be awarded either. (*See* D.I. 414 at 78)

## E.     Intentional Interference with Prospective Economic Advantage

The Court will grant Broetje's motion for JMOL on AHG's claim for intentional interference with prospective economic advantage ("IIPEA").

Under California law, an IIPEA claim requires proof of: (1) an economic relationship between the plaintiff and some third party, with the probability of future economic benefit; (2) the defendant's knowledge of the relationship; (3) intentional, independently wrongful acts on

10

the part of the defendant designed to disrupt the relationship; (4) actual disruption of the relationship; and (5) economic harm to the plaintiff proximately caused by the acts of the defendant. *See Korea Supply Co. v. Lockheed Martin Corp.*, 63 P.3d 937, 950-51 (Cal. 2003).

Here, AHG failed to present substantial evidence of at least the third of these elements: intentional, independently wrongful acts on the part of Broetje designed to disrupt the relationship between AHG and third parties. The Court has found that substantial evidence supports the jury's finding that Broetje engaged in patent and trade dress infringement, but it has also found a lack of substantial evidence to support a finding of willful patent infringement (based at least on AHG's failure to prove the objective prong of willful infringement) or intentional trade dress infringement. No reasonable jury could find AHG presented substantial evidence that Broetje knew its actions would interfere or was substantially certain it would interfere with AHG's economic relationships with third parties. *See Chaganiti v. i2 Phone Int'l, Inc.*, 313 Fed. App'x 54, 57 (9th Cir. 2009) (stating IIPEA claims require intentional conduct by defendant above and beyond breach of contract); *Code Rebel, LLC v. Aqua Connect, Inc.*, 2013 WL 5405706, at *6 (C.D. Cal. Sept. 24, 2013) (holding defamation and disparagement of plaintiff and its software programs demonstrates intent).

Given this finding, the jury's verdict in favor of AHG on its IIPEA claim will be vacated and judgment as a matter of law will be entered on this claim in favor of Broetje.

## F. Actual Damages

### 1. Lost Profits

The Court will deny Broetje's motion for JMOL that AHG failed to prove actual damages. To prove lost profits due to lost sales, the plaintiff must prove: "(1) demand for the

11

patented product; (2) absence of acceptable noninfringing substitutes; (3) his manufacturing and marketing capability to exploit the demand; and (4) the amount of the profit he would have made." *Panduit Corp. v. Stahlin Bros. Fibre Works, Inc.*, 575 F.2d 1152, 1156 (6th Cir. 1978) (internal citations omitted). Substantial evidence supports the jury's reasonable findings on each of these elements.

Regarding the first element, the Court instructed the jury that "AHG can prove demand for the patented product by showing significant sales of AHG's own patented product. AHG also can prove demand for the patented product by showing significant sales of the Broetje Parties' products that are covered by the patent in suit." (D.I. 415 at 68) AHG's witnesses testified that both AHG's and Broetje's cassettes were in high demand by the industry. (*See* Tr. 451, 551, 554, 596, 600) This was sufficient evidence from which the jury could reasonably find that there was demand for the patented product.

Regarding the second element, AHG presented evidence during trial that there were no acceptable noninfringing substitutes. The testimony at trial provided substantial evidence that the proposed noninfringing substitutes, including hoppers and vibratory bowls, were not acceptable. (Tr. 478-79, 491-92, 552-53, 596-97, 614, 1015-16) Additionally, because the allegedly noninfringing substitutes provided by Broetje were brought into this case in its late stages, the Court has already ruled that the alleged substitutes could not be characterized as "noninfringing" during trial by Broetje's damages expert. (D.I. 378 at 142)

Finally, Broetje failed to rebut the substantial evidence AHG presented that it had manufacturing and marketing capability to exploit the additional demand, or could have subcontracted to meet it. (Tr. 452, 553)

12

As for the amount of lost profits the jury awarded to AHG, again the Court finds substantial evidence to support the jury's reasonable findings. Notwithstanding Broetje's critiques, the jury was free to credit AHG's expert's testimony that he did not include royalty payments (that AHG would have made to third parties in connection with satisfying additional demand) because there could not be any royalty payments until after there was an award of lost profits, and he only counted sales of racks and loading stations sold to locations that either already had purchased accused cassettes or where accused cassettes were sold along with racks and loading stations. The Court will deny Broetje's motion for judgment as a matter of law on the amount of lost profits damages.

## 2. Convoyed Damages

The Court has already resolved this issue of convoyed damages based on the entire market value rule. (Tr 1220) Convoyed sales can be included with trade dress infringement.

## 3. Remittitur

Broetje asks the Court to accept its damages calculation instead of the damages assessment that the jury credited. Broetje also argues that there may have been a double recovery granted by the jury. As AHG observes, however, it is not possible to know how the jury reached its damages verdict and Broetje's attacks amount to improper speculation. (*See* D.I. 459 at 37-38) Further, as AHG explains, "[a]lthough the jury awarded AHG the full amount of patent lost profits calculated by Mr. Ellis for the period 2003 through December 7, 2009, it awarded less than half of the non-patent damages Mr. Ellis calculated for the period 2003 through roughly the end of 2013." (*Id.* at 37) Thus, "it is clear that the jury understood it was authorized to accept, reject, or adjust the experts' calculations based on its own view of the evidence at trial." (*Id.* at

13

38) The Court will deny Broetje's motion on these issues.

## G. Punitive Damages

The Court will grant Broetje's motion for JMOL of no punitive damages. As set forth in the verdict sheet (D.I. 416 at 15), punitive damages could only be awarded if there was first a finding of intentional trade dress infringement or IIPEA. Because the Court has found that the jury's findings for AHG on these underlying claims are not supported by substantial evidence, there is no adequate basis for an award of punitive damages.

## H. New Trial

The Court will deny Broetje's motion for a new trial.

Broetje's first ground for a new trial is the evidence the jury heard about a French appellate court decision that Broetje breached a contract with AHG. (*See* D.I. 435 at 35-36) The Court did not abuse its discretion by admitting the decision from the French appellate court. The Court advised the jury that the foreign decisions were of limited relevance. (*See* Tr. 1120-21) Moreover, during trial it was Broetje which opened the door to breach of contract evidence by violating the Court's order on this subject, so the Court permitted AHG to introduce evidence as a consequence of Broetje's action. (*See* Tr. 228-31)

Broetje next argues that AHG confused the jury by repeatedly stating that copying is wrong. (D.I. 435 at 36) Evidence of copying was relevant and probative. There was nothing improper about admitting it or permitting AHG to argue from that evidence.

Broetje's additional grounds for a new trial are also unavailing. AHG's underscoring of a Broetje's witness' inability to differentiate between AHG's cassette and Broetje's cassette was not improper and did not conflate trade dress "likelihood of confusion" with the witness'

14

confusion. Broetje accuses AHG of misleading the jury by suggesting that Broetje should have sought an opinion from a U.S. patent lawyer. (*Id.* at 38) It was entirely proper for Broetje to challenge the credentials of Dr. Budach, Broetje's German patent law expert. Broetje also argues that Dr. Kytomaa's demonstratives were beyond the scope of his presentation (*see id.* at 38), but fails to argue how it suffered undue prejudice from his testimony. Broetje argues that the Court erred by refusing to give Broetje's proposed jury instructions and claim constructions, but Broetje provides no persuasive reason for why the Court should change its view on these issues. (*Id.* at 39)

In sum, Broetje has failed to persuade the Court that the jury's verdict is against the clear weight of the evidence (on any of the issues with respect to which the Court is denying Broetje's motion for judgment as a matter of law), there is newly-discovered evidence, there was improper conduct by an attorney, the jury's verdict was in any respect facially inconsistent, there was a miscarriage or justice, or the verdict shocks the conscience. *See Williamson*, 926 F.2d at 1352-53; *Zarow-Smith*, 953 F. Supp. at 584-85. Thus, Broetje's motion for a new trial will be denied.

## I.     Rule 59 Motion to Amend the Judgment

The Court will grant in part and deny in part Broetje's Rule 59 Motion to Amend the Judgment in line with the holdings on Broetje's JMOLs as explained above.

## J.     Attorney Fees

The Court will deny AHG's motion for attorney fees because, based on the totality of the circumstances, this is not an "exceptional case." Because this is (in part) a patent case, the Court is authorized by statute "in exceptional cases [to] . . . award reasonable attorney fees to the prevailing party." 35 U.S.C. § 285. The Supreme Court has held that an "exceptional" case is

"one that stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated." *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 134 S. Ct. 1749, 1756 (2014).[3] Ultimately, the Court must make a discretionary decision based on the totality of circumstances. *See id.* A party moving for attorney fees must demonstrate, by a preponderance of the evidence, that a case is "exceptional." *Id.* at 1758. AHG has failed to meet its burden.

AHG asserts four bases for an award of attorney fees here. First, AHG asserts that Broetje intentionally and willfully infringed AHG's trade dress and patents by relying on an infringement opinion issued after the release of Broetje's product, not conducted by a U.S. patent attorney, and motivated by litigation in Germany among the parties. (D.I. 427 at 8) However, the Court has granted Broetje judgment as a matter of law based on AHG's failure to prove that Broetje intentionally and willfully infringed AHG's trade dress or patents.

Second, AHG argues that Broetje maliciously infringed AHG's trade dress and patents by developing its own product to sabotage AHG, in retaliation for AHG supplying its products to one of Broetje's competitors. (*Id.* at 12) While the evidence supports a finding that Broetje may have chosen to produce its own cassettes because AHG had begun selling its cassettes to Broetje's competitor, there is little if any evidence to support a finding that Broetje's actions in this regard were malicious. Instead, the record overall supports a finding that Broetje was engaged in routine business decisionmaking.

---

[3]The Third Circuit has held that this standard also applies to the identical provision of the Lanham Act, 15 U.S.C. § 1117(a). *See Fair Wind Sailing, Inc. v. Dempster*, 764 F.3d 303, 313-15 (3d Cir. 2014).

Third, AHG contends that Broetje maintained baseless defenses during litigation, such as unsupported claim construction positions and unfounded invalidity defenses. (*Id.* at 14-15) As noted above, and elsewhere during this litigation, the Court disagrees. (*See, e.g.*, D.I. 448 at 12-13, 16-17) The Court has not noticed any unreasonable positions taken by Broetje (or AHG for that matter) in this action. To the contrary, Broetje presented numerous reasonable noninfringement and invalidity defenses, including the position that Broetje's rivet feeding tubes did not contain "grooves," as required by the patents-in-suit. In denying AHG's motion for summary judgment of infringement, the Court found the infringement question a close call, as a "reasonable factfinder could resolve these questions in favor of either party." (D.I. 306 at 4) Furthermore, at an earlier stage of this lawsuit the Court granted Broetje's motion for summary judgment of invalidity (based on failure to disclose best mode). (D.I. 321; D.I. 325) Although this decision was later reversed by the Federal Circuit on appeal (*see* D.I. 350), the fact that this Court found the patent invalid supports a conclusion that Broetje reasonably believed it could not be held liable for infringement.

Fourth, AHG alleges Broetje engaged in improper litigation conduct by violating a court order before the jury, using a translator excessively in a witness cross-examination, and resisting discovery of a redesigned cassette. (D.I. 427 at 16-17) However, to the extent Broetje engaged in any improper conduct at trial, the Court dealt with these transgressions *at trial*, imposing adequate and appropriate sanctions. For instance, the Court permitted AHG to address breach of contract upon finding that Broetje opened the door to evidence regarding breach of contract, and the Court charged Broetje for some of the time AHG had to devote to cross-examination of Broetje's Dr. Budach (as his testimony on cross-examination, unlike his direct testimony,

17

required the assistance of a translator, using up AHG's time).

At the broadest level, following *Octane Fitness*, the Court may appropriately ask (as part of the totality of the circumstances inquiry) whether it believes this is a case that should not have been filed or, once filed, should have been litigated differently by the non-prevailing party. This being a case in which the plaintiff has prevailed, there is, of course, no basis to conclude that the case should not have been brought. More pertinently here, the Court observed nothing in how Broetje litigated the case that the Court believes it should try to deter in other cases. Absent that need for deterrence, here there is no other basis for making Broetje pay the attorney fees AHG incurred in enforcing its patent rights against Broetje's infringement.

A final comment is warranted. The undersigned judge (like all judges in the District of Delaware) handles a large number of patent cases and presides over many patent trials.[4] As long as the test for awarding attorney's fees turns on whether the case is "exceptional," the Court is obligated to consider the instant case in comparison to the full panoply of patent cases with which it has been involved, and needs to assess if the instant case is in some meaningful sense "uncommon," "rare," or "not ordinary." *Octane Fitness*, 134 S. Ct. at 1756. Having undertaken this analysis, the Court concludes that nothing about the instant case stands out as "exceptional" in any respect, including the substantive strength of Broetje's unsuccessful positions or the manner in which Broetje litigated the case.

Accordingly, the Court exercises its discretion to deny AHG's request for attorney's fees.

---

[4]As of the date of this Opinion, the undersigned judge has 382 patent cases on his docket and has presided over at least 24 patent trials (counting jury and bench trials).

## K.     AHG's Requests for Pre- and Post-Judgment Interest, Supplemental Damages, and Enhanced Damages

In its motion to alter or amend the judgment (D.I. 441), AHG seeks various forms of relief. The Court addresses each request in turn below.

### 1.     Prejudgment interest

Prejudgment interest on a damages award based on patent infringement "is the rule" under 35 U.S.C. § 284. *See Sensonics, Inc. v. Aerosonic Corp.*, 81 F.3d 1566, 1574 (Fed. Cir. 1996). Prejudgment interest is required under the circumstances here in order to compensate AHG fully for Broetje's infringement. *See Gen. Motors Corp. v. Devex Corp.*, 461 U.S. 648, 655-56 (1983) ("An award of interest . . . merely serves to make the patent owner whole . . . ."). Accordingly, the Court will grant AHG's request for prejudgment interest on its patent infringement damages award and will amend the judgment to that effect.

With respect to the trade dress infringement damages award, however, the Court will deny AHG's request to amend the judgment to add prejudgment interest. As AHG acknowledges, no statute expressly permits (or precludes) such an award. (*See* D.I. 442 at 4-5) The cases cited by AHG appear to find it important to such an award that there be a finding of intentional infringement. Here, the evidence does not support a finding of intentional infringement. Thus, the Court exercises its discretion to deny the request for prejudgment interest on the trade dress infringement award.

Prejudgment interest in this case will be calculated at the prime rate, compounded quarterly, from the date of the first patent infringement through the date of judgment. *See Devex*, 461 U.S. at 656; *LG Elecs. U.S.A., Inc. v. Whirlpool Corp.*, 798 F. Supp. 2d 541, 561 (D. Del.

19

2011). The Court is not persuaded by Broetje's arguments that it should start the prejudgment interest calculation at some date later than the date of first infringement.

AHG specifically requests prejudgment interest of $634,650. This amount, however, is based on the jury's total damages award of in excess of $14 million. Given the Court's other rulings today, the total damages award is being substantially reduced, which also reduces the base on which the prejudgment interest rate is to be applied. Additionally, as noted immediately above, the Court is not awarding prejudgment interest on the non-patent damages. Thus, the Court will direct the parties to meet and confer and calculate the amount of prejudgment interest that is warranted consistent with the Court's rulings.

## 2. Post-judgment interest

The Court will also amend the judgment to award AHG post-judgment interest, which is mandatory for all damages awarded. *See* 28 U.S.C. § 1961(a) ("Interest shall be allowed on any money judgment in a civil case recovered in a district court."). The Court will direct the parties to meet and confer and calculate the amount of post-judgment interest that is warranted consistent with the Court's rulings.[5]

## 3. Supplemental damages

AHG seeks to recover supplemental damages for infringing sales not accounted for in the parties' damages calculations presented at trial. At trial, the jury was asked to consider damages calculations as of December 2013, as AHG had not been provided Broetje sales data for any time

---

[5]To the extent there is a dispute between the parties as to the date when prejudgment interest ends and post-judgment interest begins, the parties should present their positions on this dispute in the joint status report the Court will be ordering the parties to submit.

after that date. To the extent it is not moot,[6] the Court will grant this request.

AHG should be compensated for any infringement Broetje has engaged in after December 2013 as well as any infringement it might engage in going forward, so long as AHG continues to have unexpired patents and enforceable trade dress rights. Given that the Court will not be enjoining Broetje from further infringement, it is appropriate that AHG be compensated for any future infringement.

### 4. Enhanced damages

AHG seeks enhanced damages under the Lanham Act. *See* 15 U.S.C. § 1117. Given that the Court has not sustained the jury's findings of willful or intentional infringement or unfair competition, enhanced damages are not warranted. The Court finds that the damages awarded by the jury (and not vacated by the Court) are adequate to compensate AHG. The Court exercises its discretion not to award enhanced damages.

### 5. Treble damages

AHG seeks treble damages for patent infringement. As the Court has found no basis for a finding of willful patent infringement or punitive damages, trebling the patent damages award is also not warranted. *See In re Seagate*, 497 F.3d at 1368; *see also* D.I. 465 at 1 ("[T]here is no dispute . . . that AHG's motion for enhanced damages under the Patent Act is premised on the Court's adoption of the jury's finding of willful infringement.").

---

[6]Broetje contends this issue is moot because it has not sold any additional accused cassettes and no longer offers them for sale. (D.I. 454 at 33) In reply, AHG writes that "[b]ased on this representation, AHG withdraws without prejudice its request for an accounting of supplemental damages." (D.I. 465 at 1 n.1)

21

### 6.    Permanent injunction

Finally, AHG asks the Court to permanently enjoin Broetje from further infringement. In assessing this request, the Court applies the factors set forth by the Supreme Court in *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006). Having undertaken this analysis, the Court finds that the appropriate exercise of its discretion is to deny the requested permanent injunction.

AHG has failed to show that the injury it has suffered, and any it may suffer going forward, are not adequately repaired by money damages. AHG did not prove that it has suffered loss of goodwill or harm to its reputation. Nor does the balance of hardships favor AHG, particularly given the lack of evidence from AHG relating to loss of goodwill or harm to its reputation in the absence of an injunction, while Broetje would be somewhat harmed from an injunction that complicates its marketing efforts (among other things) and is in some respects vague and overbroad.[7]  Under these circumstances, the public interest does not favor precluding Broetje from proceeding in the manner it intends to proceed.

## V.    CONCLUSION

An Order consistent with this Memorandum Opinion will be entered.

---

[7]The Court recognizes that AHG submitted an amended proposed order of injunction in connection with its reply brief, which appears to remedy some of the issues about which Broetje has expressed concern. (D.I. 464)